## EDWARD C. MEISSNER v. STANDARD RAILWAY EQUIPMENT COMPANY, Appellant.

Division One, April 1, 1908.

1. **EXCEPTIONS: Demurrer to Petition.** A demurrer to the answer and judgment of the court upon the demurrer belong to the record proper, and are reviewable without any bill of exceptions. An exception to the judgment of the court, either sustaining or overruling a demurrer to the answer, is out of place either in the record proper or in the bill of exceptions.

2. **LETTERS-PATENT: Contract for Royalties: Consideration: Defense.** In a suit by a patentee for royalties upon a contract by which defendant agreed to pay him ten per cent of the gross receipts upon all tools made in pursuance to the letters-patent and sold, a plea in defendant's answer that he diligently tried to manufacture a useful tool according to the letters-patent, that no useful tool was made or could be made according to its plans, and none were sold, should not be stricken out on demurrer. If that plea was true, the contract was void of consideration, however many tools of another kind and pattern defendant made and sold. It does not follow because the letters-patent were issued by the government the contract for the manufacture of the tool could not be void for lack of consideration.

3. ——: ——: **Improvements: Outlays of Manufacturer: Sale to Rival.** Where plaintiff sues a manufacturer for royalties alleged to be due him under a contract by which defendant agreed to pay him ten per cent of the gross receipts of all sales on pneumatic hammers made in accordance with letters-patent issued to plaintiff and any "further improvement of said invention," defendant is not liable if the hammers made were not made according to the design of that patent or any modification or improvement thereof, but were made in accordance with the design of another invention which plaintiff made while he was in defendant's service, under a salary, employed for that purpose, and at defendant's expense made the invention, although he in his own name obtained a patent on it. Said patent did not belong to plaintiff, nor was it embraced within his contract, for it was not an improvement of his invention, but a separate invention, and he neither had the right to claim royalties upon hammers made and sold in pursuance thereof, nor the right to claim the patent itself or to sell it to defendant's rival in business.

4. ———: ———: **Bad Faith.** To an inventor's suit for royalties alleged to be due him under a contract for the manufacture and sale of the patented implement, a plea of bad faith on the inventor's part, to the effect that he was in the manufacturer's employ, receiving a salary and working with the understanding that the invention he was working on would inure to the benefit of the manufacturer, making no claim that royalties were not being paid to him and asserting no claim adverse to defendant, yet in secret negotiating with defendant's rival in business, betraying defendant's business secrets, and instigating a suit against defendant as for an infringement of the rival's patents, and finally cancelling his own contract for a pretended failure of defendant to pay him royalties and selling to the rival his own patent and the inventions made at the expense of defendant and while he was in defendant's employ, is a good plea, and if true a court of equity should bar its door to him.

5. **REFERENCE: Exceptions: Motion for New Trial.** Where exceptions were saved to the referee's report, which were overruled and exceptions saved, a motion for a new trial which does not in so many words assign as a ground for the new trial that the court erred in overruling the exceptions to the referee's report, is sufficient, if it in detail points out the reasons why the court should have sustained those exceptions.

6. **CONTRACT: Interpretation By Parties.** The construction put on the contract by the parties thereto in the course of its performance, as evidenced by their acts, is an aid to the court in determining its meaning if it is expressed in ambiguous language, but such construction is not conclusive. Such construction will not control judicial interpretation except where the language of the contract is uncertain in its meaning. The court will not permit the acts of the parties to give a meaning to their contract which is at variance with its clearly expressed purpose. And where it is not expressed in ambiguous terms, there is no necessity for resorting to the acts of the parties under it to ascertain its meaning.

7. ———: ———: **Invention: Contract for Royalties.** Where the implements made and sold by the manufacturer did not embrace plaintiff's invention covered by patent or any improvement or modification thereof, but embodied improvements of the implement on a different principle invented by plaintiff while he was in the manufacturer's employment, under an express oral contract subsequent to the written contract under which plaintiff sues for royalties on the implements made and sold by the manufacturer, he being employed for that purpose and made the later improvement at the exclusive expense of the

211 Sup.—8

manufacturer, the later invention belonged, not to him, but to the manufacturer, although both may, at the time the implements were made and sold, have thought otherwise.

8. ———: ———: ———: ———: Pleadings in Another Case. And the answer filed by the manufacturer, under the oath of its president, to a suit in the Federal court by another manufacturer for infringement of patents, pleading as a defense the contract under which plaintiff in this suit claims he is entitled to royalties for tools made and sold, and asserting that under this contract it had a right to make the tools, is legitimate evidence in this case tending to show that the defendant at that time and up to that time thought that the product of its factory was covered by the contract, but the court is not to be controlled by it, nor is defendant because of it to be shut off from showing evidence to the contrary.

9. PLEADING: Plea in Equity. A plea in equity is different in principle from an answer in equity, and different in principle from an answer under our code pleading, and those differences are discussed in the opinion in this case.

10. PATENT: What is Covered by it. A patent covers only what is claimed in the application as a new invention and allowed as such in the letters-patent, and what that is is sometimes a very abstruse question, to be determined by the trier of the fact, and where the defense to a suit for royalties is that the implements made and sold by the manufacturer were not embraced in the patent, but embodied in a later invention, the trier of the fact must decide whether the implement embraces what is claimed was the new invention covered by the patent.

Appeal from St. Louis City Circuit Court.—*Hon. Matt. G. Reynolds*, Judge.

REVERSED AND REMANDED.

*Carr & Carr* for appellant.

(1) An assignment of a void patent or a license under a void patent is not a legal consideration for a promise to pay for same. Applicable to the second defense: Shepherd v. Jenkins, 73 Mo. 510; Jollife v. Collins, 21 Mo. 343; Keith v. Hobbs, 69 Mo. 84. (2) State courts have jurisdiction to determine the validity of a patent, when the invalidity thereof is set up as

a defense to a suit on a contract for royalties. Applicable to the second defense: White v. Lee, 14 Fed. 789; Harlow v. Putnam, 124 Mass. 553; Marston v. Swett, 82 N. Y. 526; Angier v. Eaton, etc., 98 Pa. St. 594; Billings v. Ames, 32 Mo. 272; Keith v. Hobbs, 69 Mo. 90; Pratt v. Gas Light Co., 168 U. S. 261. (3) Under the Patent Law an employer has a license, free and clear of royalties, to use such inventions as his employee may make in the line of his duty as an employee. The fourth defense is predicated upon this proposition. McClurg v. Kingsland, 1 How. (U. S.) 202; Solomons v. United States, 137 U. S. 342; Lane & Bodley Co. v. Locke, 150 U. S. 193; Gill v. United States, 160 U. S. 426; Walker on Patents, secs. 313 and 313a. (4) The Missouri courts have repeatedly held in equity cases that they have the right to fix their own "price for their decree;" and they have uniformly required that he who seeks equity should do equity. The fifth defense is predicated upon this doctrine, as plaintiff seeks relief in respect of a supposed license upon the faith of which defendant invested large sums of money, the benefit of which plaintiff tries to confiscate by fraudulently rescinding the license, and transferring the patent to defendant's rival to be used for the purpose of harassing defendant and destroying its investment. Whelan v. Reiley, 61 Mo. 565; Kline v. Vogel, 90 Mo. 239; Woodward v. Mastin, 106 Mo. 364; Plow Works v. Ross, 74 Mo. App. 445; Southworth v. Hopkins, 11 Mo. 338; Phillips v. Phillips, 50 Mo. 608; Cravens v. Moore, 61 Mo. 184; Alden v. Gross, 25 Mo. App. 123; Morrison v. Juden, 145 Mo. 300; Duretts v. Hook, 8 Mo. 374; Manhattan Medicine Co. v. Wood, 108 U. S. 218; Paul on Trademarks, sec. 315. (a) It is common doctrine, repeatedly affirmed in the Missouri cases, that whoever rescinds or seeks to rescind a contract shall restore to the other party the consideration received from him;

and that rescission will not be permitted where the plaintiff is unable to reinstate the defendant *in statu quo*. In the present case, the very purpose of rescinding is to confiscate the product of defendant's efforts and expenditures. Poe v. Stockton, 39 Mo. App. 550; Roetzer v. Packing Company, 58 Mo. App. 264. (b) It has been repeatedly held that a license cannot be revoked after the licensee has upon the faith of the license made improvements or otherwise expended money which would be rendered useless by the rescission of the license. Harnelson v. Railroad, 151 Mo. 498; Sease v. Cleveland Foundry Co., 141 Mo. 497; School District v. Lindsay, 47 Mo. App. 34; Gibson v. St. L. A. & M. Assn., 33 Mo. App. 165. (5) The Patent Law (sec. 4888, R. S. U. S. 1878), requires an inventor to make a specific claim for his invention; and such claim is the sole measure of his invention. The purpose of the claim is to fix the limits of the monopoly for the benefit of the public and of parties wishing to enter into contracts with respect thereto. Evans v. Eaton, 7 Wheat. 356; Brooks v. Fiske, 15 How. 215; Morrill v. Yeomans, 94 U. S. 570; Grant v. Walter, 148 U. S. 554; McClain v. Ortmayer, 141 U. S. 424; Railroad v. Mellon, 104 U. S. 117; Bridge Co. v. Iron Co., 95 U. S. 278; National Enameling & Stamp Co. v. New England Enameling Co., 151 Fed. 23; Cimotti Unhairing Co. v. American Fur Refining Co., 198 U. S. 410. (6) In a suit for royalties, the claim of the licensed patent is the measure of the defendant's liability. This follows logically from the doctrine of the next preceding point. Thorn Wire Co. v. Washburn & Moen Co., 159 U. S. 451; Fox Solid Pressed Steel Co. v. Schoen Mfg. Co., 84 Fed. 545; Covell v. Bostwick, 39 Fed. 426; Wright v. Fitz Bros. Co., 133 Fed. 394. (7) The doctrines established by the Federal courts for the interpretation of patents have become rules of property, with respect to which the con-

tract should be interpreted. Brown v. Duchesne, 19 How. 195. (8) For the purpose of aiding the court in arriving at the true meaning and scope of a patent, the same evidence is admissible in a suit where the defendant is estopped to deny validity as in a case' where defendant is a perfect stranger. The patent claim has a fixed meaning which cannot vary with the nature of the controversy or the relation of the parties. This doctrine is engrafted into the Patent Laws and defendant herein is entitled to the benefit thereof. Missouri Lamp & Mfg. Co. v. Stempel, 75 Fed. 583; Martin & Hill, etc., Co. v. Martin, 62 Fed. 272, 67 Fed. 786; Ball & Socket Co. v. Ball Glove Fastening Co., 58 Fed. 818; Essex Button Co. v. Paul, 48 Fed. 310; Babcock v. Clarkson, 63 Fed. 607. (9) The obligation to pay royalty should not be pushed beyond the words of the contract promising payment therefor. Eclipse Bicycle Co. v. Famous, 199 U. S. 581; Thorn Wire Co. v. Washburn & Moen Co., 159 U. S. 423; White v. Lee, 14 Fed. 789; Covell v. Bostwick, 39 Fed. 421; Andrews v. Landers, 72 Fed. 666; Fox, etc., Co. v. Schoen Mfg. Co., 84 Fed. 545; Moore v. National Water Tube Boiler Co., 84 Fed. 346; Ross v. Fuller & Warren Co., 105 Fed. 510; Todd v. Wheeler, 173 Pa. St. 128. (10) Both reason and the cases which invoke "practical interpretation" agree in limiting the doctrine to cases where the contract is ambiguous, and to cases where the acts of the parties are contemporaneous or long continued. So far as we know, there is no case where isolated acts are regarded as a practical interpretation. St. Louis Gaslight Co. v. St. Louis, 46 Mo. 121; Jones v. DeLassus, 84 Mo. 541; Scott v. Scott, 95 Mo. 300; Union Depot Co. v. Railroad, 131 Mo. 291; St. Louis v. Laclede Gas Light Co., 155 Mo. 1; Wetmore v. Crouch, 150 Mo. 683. (11) A plea in equity partakes of the nature of a demurrer, in that its admissions are made provisionally or hypo-

thetically for the purpose of securing a decision on some one vital question. Its function is to protect the defendant from answering the entire bill of complaint, and it opens with a formal protestation that it does not confess the allegations of the bill of complaint. Such a plea is not admissible in evidence. Greenleaf on Evidence, sec. 551; U. S. Gramophone Co. v. National, etc., Corp., 107 Fed. 129.

*Adolph E. Methudy* and *Kehr & Tittmann* for respondent.

(1) A demurrer was sustained to the second, fourth and fifth defenses and no exception was taken or saved or term bill of exceptions filed. Hence, there is nothing for this court to review as to any of those alleged defenses. Smith v. Baer, 166 Mo. 401; Tobacco Co. v. Walker, 123 Mo. 669; State ex rel. v. Johnson, 132 Mo. 110; Asphalt P. Co. v. Ullman, 137 Mo. 564; Vette v. Geist, 155 Mo. 35. (2) Defendant did not except to the finding of the referee on the third and sixth defenses nor allude to it in its motion for new trial. Hence, these defenses were also not open to review. Tufts v. Latshaw, 172 Mo. 372. (3) In its motion for new trial, the defendant does not except to the judgment of the circuit court or assign any action taken by the court as error; nor does it make the overruling of the exceptions to the referee's report a ground for new trial. Bosley v. Cook, 85 Mo. App. 422; Arkansas Land Co. v. Ladd, 103 Mo. App. 89; Maloney v. Railroad, 122 Mo. 115. (4) The report of the referee is equivalent to a special verdict, and where there is evidence to establish the fact and the referee's findings have been approved and confirmed by the circuit court, they will not be disturbed. Wiggins Ferry Co. v. Railroad, 73 Mo. 389; Woodrow v. Younger, 61 Mo. 395; Lingenfelder v. Brewing Co., 103 Mo. 578; Howard County v. Baker, 119 Mo. 407; Berthold v. O'Hara, 121 Mo. 97; Tufts v. Latshaw, 172 Mo. 372; Bank v. Don-

nell, 172 Mo. 402. (5) Exceptions to the referee's report should show specifically wherein the finding of the referee is not supported by the evidence. A general exception that the referee admitted illegal and improper evidence is of no avail. Hornblower v. Crandall, 78 Mo. 581, 7 Mo. App. 220; Dallas v. Brown, 60 Mo. App. 496; Singer Mfg. Co. v. Givens, 35 Mo. App. 610. (6) All inventions on the subject of pneumatic hammers or improvements therein then possessed or thereafter invented or acquired by Meissner are within the express terms of the contract. If there were any doubt upon the subject, the action and conduct of the parties under the contract would remove it. The construction which parties place upon their contract by their acts is its best interpretation. St. Louis Gas Light Co. v. St. Louis, 46 Mo. 128; Union Depot Co. v. Railroad, 131 Mo. 307; Williams v. Railroad, 153 Mo. 534; Sedalia Brewing Co. v. Sedalia W. W. Co., 34 Mo. App. 56. (7) The contract of December 7, 1898, grants the defendant an express license; hence, there is no room for an implied license in this case. The employer acquires no right to the invention made by his employee. The latter may, however, by his conduct estop himself from afterwards making a claim. The authorities cited by appellant do not support its claim to an "implied" license. Gill v. U. S., 160 U. S. 426; Walker on Patents (4 Ed.), sec. 313a. (8) Appellant's point that where one sells a void patent to another, the consideration fails, has no application here. Having used and enjoyed plaintiff's patent, defendant has actually received the consideration for which it promised the royalties. The law is well settled that where an invention has been used, the defendant is not at liberty to set up as a defense that the patent was void. Lawes v. Purser, 6 E. & B. Q. B. 930; Kinsman v. Parkhurst, 59 U. S. (18 How.)292; Davies & Co. v. Gray, 17 Ohio St. 351; Marston v. Swett, 66

N. Y. 212. Unless there has been an eviction or its equivalent, the royalties agreed to be paid by the licensee for the use of a patent must be paid. White v. Lee, 14 Fed. 789; McKay v. Jackman, 17 Fed. 643; Milligan v. LaLance, 21 Fed. 572.

VALLIANT, P. J.—Letters-patent No. 626,497 were issued to plaintiff from the United States Patent Office on his application therefor filed December 7, 1898.

The patent purports to cover an "improvement in Pneumatic Hammers." On the date of the filing of the application plaintiff made a contract with defendant granting to it an exclusive license to manufacture and use the implement set forth in the application and "any future improvements or modifications thereof," for royalty of ten per cent of the gross selling price of all the implements sold under the agreement. This is a suit calling for an account of the sales and praying judgment for the royalties.

The petition states that after the issuance to him of the letters-patent No. 626,497, letters-patent No. 637,810 were issued to him "for a further improvement of said invention," and afterwards he made still another improvement on pnuematic hammers for which he filed an application for letters-patent on November 12, 1900; that defendant under the contract above mentioned manufactured and sold pnuematic hammers embodying in their construction the aforesaid invention or inventions of the plaintiff, the gross selling price of which was more than $25,000, but had rendered plaintiff no account thereof and had paid him therefor only $150 at one time and $250 at another time, and plaintiff having made demand therefor and been refused, availed himself of a clause in the contract which authorized him to terminate the license and did so on April 7, 1901.

Defendant by its answer set up several defenses: First, a general denial. Second, a failure of consideration. Third, a mutual abandonment of the contract in January, 1899. Fourth, after the alleged termination of the license plaintiff sold his patents to a rival concern without reimbursing defendant for the outlays it had made in aid of plaintiff's experiments. Fifth, plaintiff does not come into court with clean hands, having sold his patents to a rival of defendant and conspired to harass and injure defendant. Sixth, a counterclaim.

Plaintiff demurred to the second, fourth and fifth defenses and the demurrer was sustained. The substance of those defenses will be more specifically stated hereinafter when we come to consider the demurrer. The cause was referred to a referee to try the issues. The second, fourth and fifth defenses having been eliminated by the judgment sustaining the demurrer, the only issues to which the referee gave attention were those raised by the general denial, the alleged mutual abandonment of the contract and the counterclaim; the referee found for the plaintiff on all those issues and recommended judgment for the plaintiff for $2,227.93 and costs. Defendant filed exceptions to the referee's report, which were overruled and exceptions taken; also motions for new trial and in arrest, which were also overruled and exceptions taken, and appeal taken to this court. The appeal comes to this court because a Federal question is involved.

I. Before we come to the trial before the referee we should consider the ruling of the court on the demurrer to parts of the answer. Respondent takes the position that as no exceptions were preserved to the ruling of the court in that particular it is not subject to review, but that is not correct. A demurrer and the judgment of the court on the demurrer belong to the record proper and are reviewable without any bill

of exceptions; an exception to the judgment of the court either sustaining or overruling a demurrer is out of place either in the record proper or bill of exceptions. [Mallinckrodt Chem. Works v. Nemnich, 169 Mo. 388; Dysart v. Crow, 170 Mo. 275; McKenzie v. Donnell, 151 Mo. 431.]

We will therefore consider those defenses to which the demurrers were sustained.

The second defense was failure of consideration.

The substance of this plea is that at the beginning of their contractual relations the plaintiff came to the defendant with an invention for an improvement on the pneumatic hammer which he represented as very useful and valuable and for which he desired to obtain letters-patent; the result was the contract sued on whereby plaintiff granted to defendant the exclusive right to use the invention and all improvements that he would make thereon, in consideration of which defendant agreed to defray the expense of obtaining the letters-patent and pay the plaintiff the sums in the contract mentioned; that defendant paid the expenses of obtaining the letters-patent No. 626,497 taken out in plaintiff's name and in good faith entered upon the performance of the contract and made every reasonable effort to utilize the invention and gave the plaintiff every facility and encouragement to render the invention useful for practical purposes, but all in vain; the implements made, though they were skillfully made, under the direction and personal supervision of the plaintiff himself, were unmarketable and incapable of use, because they were defective in principle and that the invention described in the contract was never improved so as to render it operative or useful, and neither the invention nor any tool made under it nor under any improvement of it was ever used or sold by the defendant, because it was worthless and incapable of practical use. If those state-

ments were true they constituted a good defense to
the action. The fact that defendant may have made
and sold pneumatic hammers, if they were not made
pursuant to the design invented by the plaintiff and
covered by the letters-patent 626,497 or pursuant to
any improvement on that improvement, invented by
him, would not render the defendant liable under the
contract and whether they were so or not would be a
question of fact in the case.

We do not know on what theory the court sus-
tained the demurrer to this plea, but if, as has been
suggested, it was on the theory that the plea assails
the validity of the patent and that a State court can-
not annul a patent issued by the United States Patent
Office, a sufficient answer would be that the plea does
not assail the validity of the patent, but only says
that the thing made according to the patent is of no
practical use and that in fact the defendant never
sold an implement made according to it or according
to any improvement on it. It would be strange if
the State courts had jurisdiction to try a case in which
plaintiff was suing to recover royalties on a patent,
yet not have jurisdiction to decide that the thing
patented could not be made to serve a practical pur-
pose, or that the thing which the defendant did make
and put on the market did not embrace the design
covered by the patent. State courts have compara-
tively few cases involving the intricacies of the patent
law and therefore are perhaps not as familiar with
such as the Federal courts, but when a case comes
within the jurisdiction of a State court it must decide
all questions necessary to the just determination of
the case. When a defendant, as here, is sued for a
royalty he has a right to prove, if he can, that the
thing he made and put on the market did not con-
tain the device protected by the patent and for that
purpose he is entitled to show the particular point

covered by the patent. The patent did not purport to cover all pneumatic hammers, but only the plaintiff's invention for an improvement on pneumatic hammers; defendant in this plea says it never made and sold any pneumatic hammers that contained the alleged improvement covered by this patent. Of course if the defendant made and sold hammers that contained in their mechanism the alleged improvement covered by the plaintiff's patent, it would be no defense in a suit for the royalties to say that the improvement was impracticable and of no value; the fact that the defendant made and sold them under the license of the patentee would estop the defendant from saying that the improvement was of no value. But that is not the gist of this defense. The plea is that after making the contract the defendant went to work diligently and at great expense to make use of the invention but finding after trial that it was of no use, that it was impracticable, it never used or sold any of the implements. The amount sued for is ten per cent of the gross price for which the implements were sold less commissions on sales. How could that amount be estimated if there were no sales?

Since under our system of code pleading the defendant may, under a general denial, prove any fact that goes to disprove any averment in the plaintiff's petition that is essential to the cause of action, we might presume that the court sustained the demurrer to this part of the answer on the ground that it was redundant, if it were not for the fact that the demurrer is not put on that ground and also for the fact that at the trial the defendant was not allowed to introduce evidence to show that the implements it made and sold did not embrace the alleged improvement covered by the patent or any improvement of the plaintiff's invention on that improvement. That inquiry might have led into a wide range, but if it were the fact the

defendant ought to have been allowed to prove it. Later in this opinion we will return to the subject of the rejected evidence on that point. We hold that the court erred in sustaining the demurrer to that part of the answer.

The fourth defense to which the demurrer was sustained admitted the execution of the contract sued on but denied that defendant ever used or sold any pneumatic hammers embodying the invention covered by the patent or any improvement thereof "or any inventions of the plaintiff except as hereinafter admitted."

This plea must be considered in connection with the averments in the petition, according to which the contract sued on gave the defendant the exclusive license to manufacture and sell pneumatic hammers "according to plaintiff's said invention as set forth in said application for letters-patent and according to any future improvements or modifications thereof made by plaintiff." The contract as pleaded by the plaintiff did not embrace all improvements in pneumatic hammers that the plaintiff might thereafter invent, but only the improvement contained in the application for letters-patent then pending and "any future improvements and modifications thereof made by plaintiff;" that is, improvements on the design for which the application for the letters-patent was made and modifications thereof. Therefore, an improvement in a pneumatic hammer thereafter invented by plaintiff which was not in the nature of an improvement or modification of the invention set out in the application mentioned, was not covered by the contract, and if plaintiff thereafter invented such improvement and plaintiff made use of it, defendant's liability, if liability there was, would not arise out of this contract.

The fourth defense starts out admitting the contract as pleaded, denying that defendant ever used or

sold any implements embodying the plaintiff's invention covered by his application then pending, that is, the application on which letters-patent No. 626,497 subsequently issued, or any improvement or modification thereof, and then it proceeds to state that in the winter of 1898 defendant employed the plaintiff at a given salary as a mechanical engineer for the purpose of devising and inventing improvements on pneumatic hammers, the plaintiff promising to devote his entire time and skill to devising and inventing such improvements; that plaintiff entered upon the work for which he was employed in which he was aided by advice and suggestions of the officers of defendant, and, with money of defendant used in making trials and experiments, plaintiff invented certain other improvements in pneumatic hammers and thereupon letters-patent No. 637,810 were issued in his name for the same and in like manner other improvements were invented by plaintiff (as he claims) for which he filed an application for letters-patent, all of which inventions were made at defendant's expense. That in the experimental work of plaintiff which led to these inventions the defendant paid out, in addition to the salary of plaintiff, as much as $30,000, for materials, work, etc., and other large sums in equipping its factory with machinery and tools for this purpose, all of which was done at the request and under the supervision and direction of the plaintiff; that defendant also paid the expense in obtaining the letters-patent; that defendant understood it was to have the benefit of all this experimental work and the result that would come of it; that the plaintiff knew that defendant so understood and was expending the money with that understanding and plaintiff encouraged the defendant in that belief, yet in the winter of 1900, while he was still in defendant's employ, the plaintiff entered into secret negotiations with a rival of defendant in the manu-

facture of such implements for the transfer to him of the patent rights thus acquired, and afterwards did execute instruments in writing purporting to so transfer the same; that it was not until sometime in 1901, after he had entered into negotiations with a rival in the business of defendant, that plaintiff made any demand on defendant for royalties for the implements made under the letters-patent 637,810 or the invention covered by the application filed November 12, 1900; that plaintiff has never reimbursed defendant for the expenditures made in the experimental work which led to these inventions or made any offer to do so; that plaintiff is insolvent and defendant could obtain no satisfaction at law; that the assignment by plaintiff to defendant's rival would ruin the defendant's business, etc.

If, as stated in this plea, the invention covered by the letters-patent 637,810 and by the application of November 12, 1900, are not in the nature of improvements or modifications of the invention covered by letters-patent 626,497, and if they were invented by the plaintiff while he was in the service of the defendant, under a salary employed for that purpose, and at defendant's expense, he has no right to recover of defendant for any use defendant may have made of those inventions. This subject is fully discussed and the law as just above stated is laid down in Gill v. U. S., 160 U. S. 426. In the discussion of the subject, the court in that case said:

"The fact that he (the plaintiff) made use of the time and tools of his employer, put at his service for the purpose, raises either an inference that the work was done for the benefit of such employer, or an implication of bad faith on the patentee's part in claiming the fruits of labor which technically he had no right to enlist in his service." The court after saying that the mere fact that a person is in the employ

of another does not preclude him from making improvements in the machines with which he is connected, and obtaining patents therefor as his individual property, adds: "On the other hand it is equally clear that, if the patentee be employed to invent or devise such implements his patents obtained therefor belong to his employer, since in making such improvements he is merely doing what he was hired to do." This fourth defense is bottomed on the law there stated and we think it is sound.

According to this plea the contract of employment was subsequent to the written contract sued on, and although itself not in writing, yet if it was made as stated in the plea it would entitle the defendant to the benefit of the inventions even if it varied from the written contract, but the validity of the plea does not depend on that fact because it states that these inventions were in fact not improvements or modifications of the invention covered by letters-patent 626,497 named in the written contract, thereby tendering an issue of fact. The defendant was entitled to introduce evidence on that point and to a judgment in its favor, if the proof sustained the averment and sustained also the averment that the inventions were made while the plaintiff was in the employ and pay of defendant for that purpose and at the defendant's expense. The court perhaps sustained the demurrer on the theory that the contract as pleaded in the petition and admitted in the answer covered all inventions plaintiff might make in improvements in pnuematic hammers, which we think was a misunderstanding of the contract; it covered only the improvement contained in letters-patent 626,497 and improvements or modifications on that improvement. We hold that the court erred in sustaining the demurrer to the fourth defense in the answer.

The court also sustained a demurrer to the de-

fendant's fifth defense which in effect was as follows: It set out the contractual relations that existed between the plaintiff and defendant as indicated in the other paragraphs of the answer above mentioned, referred to the fact that during the time covered defendant had paid plaintiff as salary for his services $2,955, besides the large sums consumed in experimenting and developing his inventions, and stated that by virtue of his employment the plaintiff became possessed in confidence of knowledge of the secrets of defendant's business and, while he was so in defendant's employ, a rival concern in the business, claiming to own patents covering the devices which defendant was using in the manufacturing of pneumatic hammers, brought suit against defendant charging infringements of his patents, and while that suit was pending the plaintiff entered into secret negotiations with the rival looking to a sale to him of the plaintiff's patent and betrayed the secrets of defendant's business for the purpose of aiding defendant's rival in that suit and afterwards did sell to him the patents No. 626,497 and 637,810 and instigated a suit by the rival against this defendant for an infringement of those patents, which suit was pending when this answer was filed. It concludes with the averment that the plaintiff has acted in bad faith, does not come into court "with clean hands" and the court should not entertain his suit.

The plaintiff's theory of this case is that the written contract covered the improvements in pneumatic hammers patented under letters 637,810 and the application for further patent November 12, 1900, whereas defendant's theory is that the contract does not embrace those inventions. According to the petition the defendant was to render to the plaintiff quarterly statements each year of its manufacture and sale of these implements and in default thereof the plaintiff was

entitled to rescind the contract, and the petition says that defendant refused to give plaintiff such statements and for that reason he rescinded the contract in April, 1901. According to this fifth paragraph in the answer during all that time, covering a period of about two and a half years, the plaintiff was in the employ of the defendant, receiving his salary and working with the understanding that the inventions would inure to the benefit of defendant, making no complaint, asserting no claim adverse to defendants, yet he was in secret negotiations with the defendant's rival in business, betraying defendant's business secrets, and instigating a suit against defendant as for an infringement of the rival's patents, and finally a sale by plaintiff to the rival of the inventions made at the expense of defendant and while he was in defendant's employ. If those averments are true a court of equity should close its doors against the plaintiff. Even if the plaintiff's interpretation of the contract is correct, if he continued for two and a half years in defendant's employ while defendant was all the time refusing to give him a statement of the machines made and sold, receiving his salary regularly and making the experiments at the expense of the defendant out of which these inventions came, yet while so employed he was secretly negotiating to sell the inventions to defendant's rival, betraying defendant's business secrets and instigating a suit against him for using these very inventions, if all this was true he is not entitled to maintain this suit. The court erred in sustaining the demurrer to the fifth defense in the answer.

II. After the referee's report came in the defendant in due time filed exceptions to it which were overruled and exceptions preserved and thereafter in due time filed also motions for a new trial and in arrest of judgment which were also overruled and exceptions duly preserved.

In the motion it is not assigned as a ground for a new trial *in totidem verbis* that the court erred in overruling the exceptions to the referee's report, and respondent contends that there is therefore nothing in the record for this court to review, and in support of that contention the following cases are cited: Bosley v. Cook, 85 Mo. App. 422; Arkansas Land Co. v. Ladd, 103 Mo. App. 1. c. 89; Maloney v. Railroad, 122 Mo. 1. c. 115. We do not understand those decisions to go farther in the direction of respondent's contention than to lay down the doctrine that if the appellant would have the appellate court review the action of the trial court in overruling exceptions to the referee's report he must, in his motion for a new trial, give the trial court an opportunity to review its own ruling on that point and correct its own errors. This motion for a new trial affords the trial court ample opportunity for that purpose; it points out in detail the reasons why the court should have sustained the exceptions to the report and that is equivalent to saying that the court ought to have sustained instead of overruling the exceptions and that it erred in so ruling.

III. When the case came into the hands of the referee it had been shorn of all the defenses pleaded except the general denial, the abandonment of the contract and the counter-claim. The plea of abandonment of the contract was in effect that after faithful trial and experimental tests the device patented in letters 626,497 was found to be of no practical utility and the contract was abandoned, and thereafter the defendant employed the plaintiff at a salary of $90 a month, to be increased as the business might develop, for which plaintiff was to devote his whole time and skill to the purpose of inventing experiments in pneumatic hammers, for which defendant was to furnish materials, tools, etc., and defray all expenses and was to have the use and benefit of the inventions that might

be made; that in pursuance to that agreement the invention covered by letters 637,810 was made. The answer in this connection denies that the invention claimed in plaintiff's application of November 12, 1900, was made by him. The answer denies that any of the implements made and sold by defendant contained the invention covered by the letters-patent 626,497 or any improvement or modifications thereof.

The referee found as a fact that both parties treated the subject as if all the hammers that defendant made and sold came under the contract. He says: "I find that defendant did not call this in question until April, 1901, or possibly a week or two before that time. The contract seems readily susceptible of the construction thus put on it, and I see no occasion for weighing its words and phrases, as we might perhaps have to do without the light shed on it by the parties' conduct. In this view I think the 'riviters' come under the contract as well as the 'chipping hammers.'" Again the referee says: "I am asked by defendant for a detailed interpretation of the contract in suit. But I see no propriety in dealing with theoretical questions, such as whether any one of the particular hammers manufactured would come under the terms of the contract if we had not a ray of light on the matter from the conduct of the parties. As I view it the parties have said that all these hammers are under the contract. That is the whole practical question in the case. I think the court is not called on to extinguish the light offered by the conduct of the parties and build up in the dark a system of interpretation for this contract based on rules of grammar and logic." Under that ruling the referee rejected nearly all the evidence, particularly that of a technical character, that defendant offered to show that the hammers it made did not embrace the "improvement" patented in letters 626,497 or any improvement or mod-

ification thereof. The effect of the referee's ruling was that whether the implements made and sold by defendant came under the contract or not, the parties treated them as such and therefore defendant is shut off from showing the contrary.

We think the learned referee carried the doctrine of practical interpretation too far. The construction put on a contract by the parties thereto in the course of its performance, as evidenced by their acts, is an aid to the court in determining the meaning of the contract if it is expressed in ambiguous language, but such construction is not conclusive. "Where the parties to a contract have given it a particular construction, such construction will generally be adopted by the court in giving effect to its provisions. And the subsequent acts of the parties, showing the construction they have put upon the agreement themselves, are to be looked to by the court, and in some cases may be controlling. . . . . The rule above stated does not apply, however, where the meaning of the terms used is clear. In such a case the fact that the parties have themselves, by their subsequent conduct or otherwise, placed an erroneous construction upon them will not prevent the court from giving the true construction." [9 Cyc. 588, 589, 590.] The same author, at page 591-2, says: "The question of the meaning of a written contract is ordinarily one of law for the court and not one of fact for the jury. But where the construction of a written contract depends on extrinsic facts as to which there is a dispute, its construction is a mixed question of law and fact, and is for the jury under proper instructions from the court." This court has never applied the doctrine of contemporaneous construction by the parties as evidenced by their acts as controlling the judicial interpretation of a contract except in cases where the language of the contract is uncertain in its meaning. In St. Louis v. Laclede Gas

Lt. Co., 155 Mo. l. c. 19, the court said: "The views expressed find support in the contemporaneous interpretation of the parties, which, when the language of the contract is ambiguous, is entitled to great, if not controlling influence." In Wetmore v. Crouch, 150 Mo. l. c. 682, the court, after stating the doctrine as above, said: "But when the terms of the contract are certain and its meaning is clear, the conduct of the parties under it indicating that they put a construction upon it at variance with its true meaning, will not control the court in construing it, nor in adjudging the rights of the parties under it, unless the conduct of the one has been such as to mislead the other to his disadvantage." The doctrine has never been carried so far by this court as to give a meaning to a contract at variance with its clearly expressed purpose.

The meaning of this contract is not expressed in ambiguous terms and there is no necessity for resorting to the acts of the parties under it to ascertain its meaning. The petition itself states that the right granted to the defendant by the contract was "to manufacture, sell and use pneumatic hammers under and according to plaintiff's said invention as set forth in said application for letters patent and according to any future improvements or modifications thereof made by plaintiff."

It is not claimed by plaintiff that he was the inventor of pneumatic hammers or that his application for a patent covered pneumatic hammers, but his invention was an improvement on pneumatic hammers and what he granted to defendant was the right to use his invention and any improvement or modification of his invention. Defendant's proposition is that the implements made and sold by it did not embrace the plaintiff's invention covered by patent 626,497 or any improvement or modification thereof, but that they embodied improvements, in pneumatic hammers, on a

different principle invented by plaintiff while he was in the employ of the defendant, under an express oral contract subsequent to the written contract, employed for that purpose, and made at the exclusive expense of the defendant. If that is true then the inventions belonged to the defendant, although both plaintiff and defendant may at the time the implements were being made and sold have thought otherwise.

The question of difficulty here is not of the construction of the contract, but of understanding the facts to which the contract is sought to be applied. Are the mechanical principles which are covered by the letters-patent 637,810 and those covered by the application filed November 12, 1900, improvements on the invention covered by letters-patent 626,497, and do the tools made and sold by defendant embrace the mechanical principle contained in plaintiff's patent 626,497 or improvements or modifications thereof?

In a suit in a Federal court in Illinois by the Chicago Pneumatic Tool Company against this defendant for infringement of patents, the defendant filed an answer, under the oath of its president, pleading this contract as its defense and asserting that under this contract it had the right to make the implements, and in a suit by this plaintiff in a Federal court in St. Louis for the same royalty the plaintiff is now seeking to recover, the defendant filed a plea in equity, not denying or admitting its liability for royalties, but averring that it had paid the plaintiff $400 on account of the royalty and thereby that the amount in dispute was reduced to less than $2,000, the minimum of that court's jurisdiction. The answer in the suit in Illinois was legitimate evidence in this case tending to show that the defendant at that time and up to that time thought that the product of its factory was covered by the contract, and it was proper for the referee to consider it, but he was not to be controlled by it, nor

was defendant to be shut off from introducing evidence to the contrary. Perhaps also the plea in equity in the suit of the plaintiff in the Federal court was admissible, although that stands on a different footing.

We have nothing in our system of code pleading that is exactly of the character and office of a plea in equity. A plea in equity is different in principle from an answer in equity, and different in principle from an answer under our code pleading; it is not directly responsive to the bill of complaint in equity or to the petition under the code. It is not the same as a demurrer, yet it partakes more of the nature of a demurrer than of an answer to the merits. A demurrer admits the facts that are well pleaded in the pleading to which it is addressed, but it admits them only for the purpose of the demurrer, and, if the demurrer be overruled, it cannot be read in evidence against the party on the theory that he thereby admitted the facts. The same principle is applied to a plea in equity in courts adhering to the ancient chancery procedure. In 1 Greenleaf on Evidence (16 Ed.), section 551, after saying that the defendant's answer in equity may be read in evidence against him, the author says: "But a demurrer in chancery does not admit the facts; for if it is overruled the defendant may still answer. So it is as to pleas in chancery; these, as well as demurrers, being merely hypothetical statements, that, supposing the facts to be alleged, the defendant is not bound to answer."

In the case at bar the office of the plea in equity which the defendant filed in the Federal court, when sued there by plaintiff on this same demand, was to show that, admitting for the purpose of the plea the facts to be as stated in the bill of complaint, still the plaintiff could not maintain that suit in that court, because the defendant had already paid plaintiff $400 on his claim which payment reduced the sum in dispute

to less than $2,000, the minimum sum of which that court had jurisdiction. A man may make a part payment on a demand which he at the time thinks he is obligated to pay, but the payment will not preclude him from afterwards disputing the demand if on further information or advice as to his legal rights he thinks he is not so obligated.

Assuming the answer filed by the defendant in the Federal court in Illinois and the plea in equity filed by him in the Federal court here were both admissible in evidence neither was conclusive of the facts in this case.

A patent covers only what is claimed in the application as a new invention and allowed as such in the letters-patent. That is sometimes a very abstruse point. The Act of Congress directing what the applicant shall set out in his application for a patent says: "and he shall particularly point out and distinctly claim the part, improvement or combination which he claims as his invention or discovery." [R. S. U. S. 1878, sec. 4888.] In construing that statute the United States Supreme Court has said: "It is necessary, therefore, for him, in his application to the Patent Office, to describe that upon which he engrafts his invention, as well as the invention itself. . . . It thus occurs that, in every application for a patent, the descriptive part is necessarily largely occupied with what is not new, in order to an understanding of what is new." [Merrill v. Yeomans, 94 U. S. 1. c. 570.]

An infringement may be made by one who having studied the patent honestly concludes that his work is not an infringement, and likewise one may believe that his act is covered by a patent when it is not. It often requires great skill to decide such a point. Men may honestly form at one time and as honestly change at another time their opinions on such subjects. The trier of the fact must decide what is the

new point in the invention and he must decide whether the implement manufactured contains that new point. Here, we have the application of date December 7, 1898, the letters-patent 626,497, issued on that application, the application for and the letters-patent 637,-810 issued thereon, and the application of date November 12, 1900, and we have the tools manufactured and sold by defendant. It is for the trier of the fact to find whether or not the inventions covered by letters 637,-810 and the application of November 12, 1900, are either improvements on or modifications of the improvement covered by letters-patent 626,497, and whether or not the tools made and sold by defendant contain in their mechanism the invention contained in the letters-patent 626,497 or an improvement on that invention or a modification thereof. The trial of those issues may be tedious but they must be tried before the court can pronounce judgment in this case. Those issues have not yet been tried, because the ruling of the referee on the "practical interpretation" doctrine, shut out all, or the greater part, of the evidence defendant offered on its side of those questions.

There is a discussion in the briefs as to the admissibility of the evidence offered by defendant to prove "the state of the art" at the time the letters-patent were issued. Evidence of that condition may be competent in this case if it serves to explain anything in the applications or letters-patent that is otherwise obscure, but it is not competent to impeach the validity of the patents. The question of the admissibility of evidence of that kind is not exactly the same in a suit to recover royalties under a contract that it is in a suit for infringement of a patent.

The judgment is reversed and the cause remanded to be retried according to the law as herein expressed.

All concur.