261 S.W.2d 936 (1953)
BOHLE
v.
STERNFELS.
No. 43333.
Supreme Court of Missouri, Division No. 1.
November 9, 1953.
*937 Champ C. Stonebraker, George J. Bagot, Clayton, for appellant.
No attorney for respondent.
COIL, Commissioner.
Plaintiff-appellant sought to recover $8,425.35, money allegedly loaned to defendant-respondent. The petition was in six counts. At the close of plaintiff's evidence, the trial court directed verdicts for defendant on counts 1 to 5 inclusive. The jury returned a verdict for plaintiff on count 6 for $100 (the amount sought), and plaintiff has appealed from the final judgment. He contends that there was sufficient substantial evidence adduced on each of the five counts to make submissible issues. Defendant's trial counsel withdrew prior to the time for filing briefs on appeal, and defendant has filed no brief.
The first four counts alleged these loans to defendant: December 1947, $3,000; during 1948, $1584; from January 1949 to July 1950, $2,691.33; October 1949 and April 1950, $250. Count 5 alleged that, at the instance and request of defendant, plaintiff expended $800 for windows, screens, a water heater, and repairs on the house hereafter mentioned. Plaintiff alleged in each count a promise to pay, a demand, and refusal. Defendant's answer was a general denial.
The record, although short, is somewhat confusing and difficult to analyze. Despite, however, the unsatisfactory state in which we find the record, we are of the opinion that plaintiff made a submissible case on each of counts 1 to 5 inclusive.
All of plaintiff's decisive testimony went into the record without objection. From his testimony, considered in the light most favorable to him and giving him the benefit of all reasonable inferences, the jury could have found that: In November 1947, plaintiff loaned defendant $3,000 to be used by her as a down payment on a residence under an agreement whereby the $3,000 was to be repaid to plaintiff when defendant sold the residence; in January 1948, plaintiff *938 loaned defendant $1,548 for the purpose of making a payment then due on the residence, which amount defendant promised to repay to plaintiff when the residence was sold; from January 1949 to July 1950, plaintiff loaned defendant $2,691.33, the difference between the monthly house payments when due and the money defendant had available to make those payments, all of which, by agreement, was to be repaid to plaintiff when the house was sold; at defendant's request, plaintiff made two payments on the residence, one in October 1949 and the other in April 1950, totaling $250, which total amount defendant agreed or had agreed to repay when the residence was sold; from December 1947 to January 1951, plaintiff, at the request of defendant, expended $235 for lumber, screens, pipe, and a grill, which amount defendant promised to repay to plaintiff when the residence was sold; defendant advised plaintiff in 1950 or 1951 that she had sold the residence for $14,000, whereupon plaintiff demanded payment of all the sums theretofore loaned to her in accordance with their agreements as to payment, and defendant refused and failed to repay any portion of the money loaned.
Now, despite the fact that it was developed on cross-examination that many of plaintiff's statements on direct were his conclusions and were not based upon detailed business records, this testimony, as we have noted, went in without objection and its weight was for the jury.
The only witness other than plaintiff who testified was plaintiff's pastor, who said that, at plaintiff's request, on six or eight occasions he discussed with plaintiff and defendant the matters in dispute between them. The first time was approximately in May 1951 and the last some time in the fall of 1951. The witness, without objection, testified as follows:
"Mr. Bohle came to me, of course, at first as my member, and he told me of the case and asked me to have a conference with her, that Mrs. Sternfels was also a member of the Lutheran Church, and I asked Mr. Bohle to drop his law suit against her, and it was at my persuasion that he did it. He told me that he had loaned Mrs. Sternfels money for the purchase of the two pieces of property that have been in question. Mrs. Sternfels admitted that Mr. Bohle had advanced both of these purchases, but where Mr. Bohle maintained it was a loan Mrs. Sternfels maintained it was a gift.
"Q. Now, what else was the subject of the conversation on the last occasion? A. An attempt to reconsile the differences between the two people, an attempt to find a middle groove to suit both Mr. Bohle and Mrs. Sternfels, a compromise of some sort, Mrs. Sternfels would concede to give Mr. Bohle a part of what Mr. Bohle claimed. It concerned an agreement that had been drawn up by someone, whereby Mrs. Sternfels would give Mr. Bohle a certain sum of money provided Mr. Bohle would leave her alone.
"Q. And did she agree to give him any money? A. A document had been prepared stating that a certain amount of money would be given Mr. Bohle.
"Q. How much was to be given to Mr. Bohle? A. That document, in which the three of us spoke together, mentioned twenty-five hundred dollars.
"Q. And was that agreement ever consummated, do you know? A. To my knowledge, no.
"Q. And do you know why it wasn't consummated? A. Mr. Bohle objected to certain paragraphs in the document as not protecting his interests sufficiently, as being too one-sided, and all for her protection and nothing for him."
Although plaintiff had alleged in his petition that certain of the loans were to be repaid on demand, his proof clearly showed that no money was due him from defendant unless and until the house was sold. The proof is not as satisfactory as it should be as to whether, and if so when, the house was sold. Plaintiff testified at one *939 place: "Did you ever ask her to repay that money to you? A. Not until the house was sold.
"Q. When was the house sold? A. I forget just when it was. * * * It was sold in 1951, I am not sure, and she called up and I demanded the money, and she said she had an offer on the house and was going to sell it, and up to that time there was no real money, she didn't owe anything." At another place, plaintiff testified:
"Q. When did you make a demand on her to pay all this money back with the exception of the hundred dollars [$100 was the amount alleged to be due in count 6, with which we are not here concerned]? A. She called up in '50 and said she had sold the house for fourteen thousand dollars and I said `Where do I come in'? and she said `You don't'.
"Q. Did you, at that time, make a demand on her for the money? A. Yes, I wanted the money when she sold the house.
"Q. Did you receive any money at all? A. No, sir." In view of plaintiff's theory that his agreement with defendant required her to repay the money only when the house was sold, it was important for plaintiff's proof to show with certainty that the house had been sold and the time of the sale. While plaintiff's proof leaves the matter somewhat indefinite, nevertheless, in ruling the question of whether the trial court correctly directed verdicts for defendant, we hold that plaintiff's proof was such that the jury reasonably could have found that defendant sold the house in 1951 for $14,000.
A question important to the determination of this appeal concerns the effect of two deeds and plaintiff's testimony concerning the transactions of which they were a part. These deeds were marked defendant's exhibits 8 and 9, and, while not offered in evidence, were considered by the trial court and, in large part, formed the basis for his direction of verdicts for defendant on counts 1-4 inclusive. Exhibit 8 was a quitclaim deed dated and acknowledged January 6, 1950, recorded January 9, 1950, by which defendant conveyed the property to one Minnette Bruns for one dollar "and other valuable considerations". Exhibit 9 was a quitclaim deed dated, acknowledged, and recorded on January 10, 1950, whereby Minnette Bruns conveyed the property back to defendant. Plaintiff's testimony concerning these deeds was such that it may not be satisfactorily summarized. We, therefore, set forth below all of plaintiff's testimony which related to these deeds and the transaction evidenced by them.
"Q. Did Mrs. Sternfels ever deed you the property on Russell Avenue? A. No.
"Q. Never did? A. Not to me.
"Q. Did she to someone for you, to someone else named for your benefit? A. Yes.
"Q. I will show you Defendant's Exhibit `8' and ask you if it is not a fact that she deeded the Russell Avenue property to you in someone else's name, is that right? A. I didn't have anything to do with that, it was between her and Mr. Gross, I don't know.
"Q. But did she deed the property for your benefit? A. I don't know.
"Q. You took the position you owned the property, didn't you? A. It wasn't deeded to me.
"Q. Did you take the position you owned the property? A. I paid for it, I took it for granted it was mine.
"Q. It was in Mrs. Sternfel's name? A. Yes.
"Q. You wanted it in her name? A. Not necessarily.
"Q. Didn't you ask for it to be taken out in her name? A. I talked to Mr. Gross and he said he would have it signed over to someone else.
"Q. Didn't you say you didn't want it in your name because you were a married man? A. Yes.
*940 "Q. You did want the property? A. I wanted the money.
"Q. Doesn't this deed give you the property back in the name of a third person? A. Yes.
"Q. I mean Defendant's Exhibit `8'? A. Yes.
"Q. After you got the property from Mrs. Sternfels I will ask you if it isn't a fact that you insisted that she have it back again, and if you didn't have Defendant's Exhibit `9' made out to Mrs. Sternfels? Isn't that right? A. That's right.
"Q. And, notwithstanding that you owned the property at one time, you want the jury to believe you didn't get that three thousand dollars back, is that right? A. That's right.
"Q. You didn't pay Mrs. Sternfels anything for the property when she gave it back to you, according to Defendant's Exhibit `?' [8], did you? A. But she never give it back to me.
"Q. It wasn't? A. No.
"Q. I thought you said it was. A. It was Mr. Gross, not to me.
"Q. Did you tell Mr. Gross to give it back to Mrs. Sternfels? A. Under conditions, yes, I wanted the money, I didn't want the house, he could keep it or give it back.
"Q. After you had Defendant's Exhibit `9' made out giving the property back to Mrs. Sternfels, you brought a law suit about the property, didn't you? A. Yes, sir. * * *
"Q. Did you ever own this property? A. No, sir.
"Q. Did you ever claim to own it? A. No.
"Q. You never did? A. No, sir.
"Q. Did you ever have a law suit about it? A. Yes, sir.
"Q. In that law suit, didn't you claim to own it? A. Endorsed to her, yes.
"Q. But she was supposed to be holding it in trust for you, is that right? A. Yes.
"Q. So you did claim to own it? A. Yes, you can put it that way.
"Q. Your first lawyer in that law suit was Mr. Falzone? A. Yes, sir.
"Q. And Mr. Stonebraker, who has just come in and sitting behind Mr. Bagot, he was one of your lawyers, he was the second lawyer in that law suit? A. Yes.
"Q. And you dismissed that law suit? A. Yes, by request.
"Q. By request? A. Yes. * * *
"Q. What records do you have for spending that eight hundred dollars? [The $800 involved in count 5.] A. I have a record for water heater for seventy dollars, and the lumber and screens for forty dollars, and I have got a pipe, water piped to the third floor, fifty dollars, and I put about fifty dollars worth of wire in there, and that was October, 1947 to October in 1948, and I put a grill in for her that I paid seventy-five dollars for.
"Q. Now, did you put that in your own property? A. It was in her property.
"Q. I think you maintained that that property was in trust for your benefit? A. I didn't get no money out of it.
"Q. It was a loan she got? A. You can put it any way you want to.
"Q. How do you put it? A. It was a loan.
"Q. A loan? A. Yes, when the property was sold I was supposed to get my money, that we agreed. * * *
"Q. Now, concerning Defendant's Exhibit, concerning the deed purporting to convey this property to you, do you know who Brunf Brown [Minnette Bruns?] is? A. No, sir.
"Q. Did you ever have any agreement that that party was to control this property for you? A. No, sir.
*941 "Q. Did you ever receive any money out of this property when it was sold? A. No, sir.
"Q. Have you ever received one dime out of this property, in any respect? A. No, sir.
"Q. Was there any condition attached, when these deed(s) were drawn up, was there any condition attached to the execution of that deed, was there anything you was supposed to do? A. No, sir.
"Q. Before the property was conveyed? A. No, sir. * * *
"Q. The property, at one time, you had in the name of a third person for your own benefit? A. That was Mr. Gross's thought, that I don't know how it worked.
"Q. Mr. Gross did it at your request? A. He said he would call her in and have her sign a quit-claim deed.
"Q. He did, didn't he? A. Yes.
"Q. In your name? A. Not in my name.
"Q. You didn't want it in your name because you were a married man? A. No."
It was apparently the trial court's view that the two deeds and plaintiff's testimony conclusively established that plaintiff had been paid the amounts sought in counts 1-4 inclusive by way of an accord and satisfaction. That such was the trial court's theory is indicated by this statement made at the time verdicts on those counts were directed: "Gentlemen of the jury, this petition is in six counts. The first four counts are based on money that he said he put in the house, and the law holds that he was repaid when this property was turned over to him as shown in Exhibit No. 8, I think it was."
We are unable to agree. On the contrary, we are of the opinion that the deeds and plaintiff's testimony did not establish as a matter of law payment by means of an accord and satisfaction between plaintiff and defendant or repayment otherwise of all or any part of the money which plaintiff sought to recover in counts 1 to 4, inclusive. We are convinced that the deeds and plaintiff's testimony leaves the entire transaction of January 1950 wholly indefinite and inconclusive. It is true that this testimony, considered in connection with the deeds, is subject to a number of possible constructions and that from it a jury might draw various inferences in deciding the nature of the 1950 transaction. It may be that this testimony would permit the jury to find that the money plaintiff claimed to have loaned defendant was in reality money expended by him in acquiring his own house to be held for him by defendant; or that plaintiff intended to and did accept the deed in January 1950 in payment of all moneys due from defendant to plaintiff up to that time. (This latter construction, however, fails to take into account the money plaintiff claimed to have loaned defendant subsequent to the date of the deed.)
We must, however, in ruling the question before us, construe all of plaintiff's testimony in its light most favorable to him, and give him the benefit of any reasonable favorable inferences which may be drawn therefrom. So doing, we think plaintiff's testimony, considered in connection with the deeds, does not establish as a matter of law payment by way of accord and satisfaction, or payment otherwise. We think the jury reasonably could have found from all the evidence: that there was no agreement or contract between plaintiff and defendant whereby the parties agreed that plaintiff would accept from defendant a deed to the property in question in satisfaction and payment of the moneys plaintiff claimed to have theretofore loaned to defendant; that plaintiff did not accept the deed or act under it; and that as a result of such refusal to accept, the property was conveyed back to defendant by the third party grantee.
An accord and satisfaction contemplates an agreement between the parties to give and accept something different from that claimed by virtue of the original obligation and both the giving and the acceptance are essential elements. Western *942 Military Academy v. Viviano, 235 Mo.App. 301, 308, 133 S.W.2d 1098, 1102[5]; Zacher v. Peters, Mo.App., 179 S.W.2d 908, 909[2, 3]. One of the elements necessary to constitute payment is that the thing tendered as payment be accepted as such. 70 C.J.S., Payment § 1 (Elements), pages 210, 211; Skinner v. Johnson, Mo.App., 74 S.W.2d 71, 73; Mercantile Commerce Bank & Trust Co. v. Meletio, Mo.App., 84 S.W. 2d 655, 659. The fact that the deed from defendant to Bruns was recorded was not conclusive that the deed was delivered to plaintiff or had been accepted by him in payment of a claimed monetary obligation of defendant. These conclusions were not compelled from plaintiff's testimony: that Minnette Bruns, the grantee, was plaintiff's agent or designate, or that the deed was recorded by plaintiff, at his direction, or with his knowledge.
Nor was plaintiff's admission that, by an abandoned petition in a prior lawsuit, he had claimed that defendant held the house in trust for him, conclusive evidence of that fact. The admission was evidence for the consideration of the jury. Andrus v. Business Men's Accident Ass'n of America, 283 Mo. 442, 455, 223 S.W. 70, 75, 13 A.L.R. 779; Eckner v. Western Hair & Beauty Supply Co., 236 Mo.App. 988, 996, 162 S.W.2d 621, 626[4, 5]; Meissner v. Standard Ry. Equipment Co., 211 Mo. 112, 135, 109 S.W. 730, 736.
As stated, in count 5 plaintiff sought to recover $800 which he alleged he had expended at defendant's request for items of equipment for, and repairs to, the house. Plaintiff's testimony was that from December 1947 to January 1951 he spent $235 for enumerated items which were placed in the house; that the money expended for these purposes was a loan to defendant who promised to pay when the house was sold.
The trial court directed a verdict for defendant on count 5 for the stated reason that "it wasn't properly proven * * * to prove that account you must bring in the various merchants and workmen that did the work and supplied the goods * * *." As noted, however, plaintiff testified these expenditures were loans to defendant, that defendant promised to repay these amounts when the house was sold, that the house had been sold, and that, despite demand, defendant failed and refused to repay. Plaintiff's evidence made a case for the jury on count 5 as well as on counts 1-4 inclusive. Plaintiff's credibility and the inferences to be drawn from his evidence were for the jury. Emory v. Emory, Mo. Sup., 53 S.W.2d 908, 911[1, 2].
Reversed and remanded.
VAN OSDOL and LOZIER, CC., concur.
PER CURIAM.
The foregoing opinion by COIL, C., is adopted as the opinion of the court.
All concur.