F. A. ORDELHEIDE, Administrator of Estate of
WALTER L. LEEK, v. MODERN BROTHER-
HOOD OF AMERICA, Appellant.

### Division One, July 3, 1916.

1. FRATERNAL INSURANCE: Certificate to Legal Represent-
ative: Suicide. Suicide is not a defense to a suit on a cer-
tificate issued to insured's legal representative by a fraternal
beneficiary association licensed to do business in this State.
The statute requires payments of death benefits to be made
"to the families, heirs, blood relatives, affianced husband or
affianced wife of, or to persons dependent upon, the member,"
and that statute is a part of all the contracts of such an as-
sociation, and it cannot claim suicide as an exemption from
payment unless it complies with it.

2. ———: ———: ———: Certificate Authorized By Laws of
Own State. It is not sufficient to claim suicide as an exemp-
tion that the defendant is a fraternal beneficiary association
licensed to do business in this State and as such has issued
a certificate authorized by the laws of its own State. Under
such circumstances it can issue certificates in this State, but to
be entitled to claim suicide as an exemption from payment, its
certificates must comply with the laws of this State, for such
an exemption is in the nature of a privilege, and if it issues
a certificate not authorized by our law it has no right to
claim the exemption.

3. LEGAL REPRESENTATIVE: Does not Mean Heirs. The
words "legal representative" infrequently mean "heirs," but
in a statute declaring that a fraternal beneficiary association
shall not issue a certificate "unless the beneficiary under said
certificate shall be husband, wife, relative, legal represent-
ative, heir or legatee," the words "legal representative" do
not mean "heirs," as is plain from the context, but personal
representative, or administrator, etc.

Appeal from Warren Circuit Court.—*Hon. James D.
Barnett,* Judge.

AFFIRMED.

*Sparrow & Page* for appellant.

(1) That part of Sec. 1408, R. S. 1899, designating the class of persons to whom benefit certificates may be made payable is no part of the definition or description of a fraternal benefit society. Westerman v. Supreme Lodge, 196 Mo. 670; Tice v. Supreme Lodge, 123 Mo. App. 85, 204 Mo. 354; Armstrong v. Modern Brotherhood, 132 Mo. App. 171. (2) When Leek had his benefit certificate made payable to "legal representatives related to the member as . . . within 90 days" after proof of death, he meant his heirs or next of kin. R. S. 1899, sec. 1411. (3) The dissenting opinion in this case was concurred in by Division No. 2 of this court, in the case of Armstrong v. Modern Brotherhood, 245 Mo. 158. This court, also, in the Armstrong case, overruled the decision of the Kansas City Court of Appeals in the case of Dennis v. Modern Brotherhood of America, 119 Mo. App. 210, so confidently relied upon by respondent.

*Emil Roehrig* for respondent.

(1) The defense of suicide is not available where it does not appear that the deceased contemplated suicide at the time of taking out the policy of insurance. Sec. 7896, R. S. 1899. (2) This appellant has failed to avail itself of the benefits and exemptions accorded fraternal beneficiary associations which come within the descriptions of such associations defined by Sec. 1408, R. S. 1899, because of its failure to comply with the terms of Sec. 1408-1410, R. S. 1899. Dennis v. M. B. A., 119 Mo. App. 210; Pauley v. Modern Woodmen, 113 Mo. App. 473; Herzberg v. M. B. A., 110 Mo. App. 328; Baltzell v. Modern Woodmen, 98 Mo. App. 153; Brasfield v. Modern Woodmen, 88 Mo. App. 208. (3) The contract made between appellant and the respondent's intestate Walter L. Leek, is not such a contract as is intended to be covered by and protected by the provisions of the Missouri law relating to fraternal beneficiary associa-

tions. R. S. 1899, secs. 1408-1410; Herzberg v. M. B. A., 110 Mo. App. 328; State ex rel. v. Orear, 144 Mo. 129; Toomey v. Supreme Lodge, 147 Mo. 129. (4) It is the contract in a given case that determines the character and legal status of the parties thereto, and in the case at bar the contract alone determines the kind of insurance written by the appellant insurance company, its name or classification by the Insurance Department being immaterial. Aloe v. Fidelity Mut. Life Assn., 164 Mo. 686; McDonald v. Banker's Life Assn., 154 Mo. 628; Baltzell v. M. W. A., 98 Mo. App. 159; Herzberg v. M. B. A., 110 Mo. App. 333; Logan v. Fidel. & Cas. Co., 146 Mo. 115; Westerman v. Supreme Lodge, 196 Mo. 741. (5) The term "legal representative" in the common use of the words and in its ordinary meaning and signification is a term equivalent to "executor" or "administrator." 25 Cyc. 177; Herzberg v. Modern Brotherhood, 110 Mo. App. 328. The meaning of the term in a particular case depends upon and is controlled by the context and the intent with which it is used, as well as by the existing state of things and the relative situation of the parties to be affected. Loos v. Life Ins. Co., 41 Mo. 538.

GRAVES, P. J.—This is the second appearance of this case in this court. It was first here upon the theory that a constitutional question was involved. [Ordelheide, Admr., v. Modern Brotherhood of America, 226 Mo. 203.] We held that there was no constitutional question involved and certified the case to the St. Louis Court of Appeals. About the same time we likewise recertified the case of Dennis v. Modern Brotherhood of America, to the Kansas City Court of Appeals. [Dennis v. Modern Brotherhood, 231 Mo. 211.]

When the Dennis case, supra, was pending here it was suggested that there were adverse views upon the question involved by the St. Louis and Kansas City Court of Appeals. [Dennis v. Modern Brotherhood of

America, supra.] These differences seem to have been
at least partially settled by the opinion of the majority
of the St. Louis Court of Appeals in the instant case,
for that opinion cites approvingly the Kansas City
Court of Appeals opinions. Judge REYNOLDS, however,
dissents, and certifies.

The contention is sharply drawn. Plaintiff con-
tends that whilst defendant was chartered in Iowa as
a fraternal beneficiary association, and whilst it was
licensed in Missouri, as such, yet the policy actually is-
sued was an old-line insurance policy, and the statute
exempting it from our general statute as to suicides has
no bearing. Defendant contends *contra*.

To make the issue plainer, the plaintiff contends
that under the laws of Missouri pertaining to fraternal
beneficiary associations, a certificate payable to the
"legal representatives" could not be issued, and if so
issued it then becomes an insurance policy within the
purview of our general insurance laws, and suicide is
no defense unless it be shown that the insured contem-
plated suicide at the time of taking out the certificate or
policy. In the record there was no evidence tending to
show that suicide was contemplated by Leek when his
certificate was issued. The record shows plaintiff en-
titled to the full amount, if entitled to recover at all.

The judgment of the trial court was for plaintiff
for the $1000 and some accrued interest, and the major-
ity opinion of the Court of Appeals by CAULFIELD, J.,
affirms this judgment. The case is here in the consti-
tutional way.

The facts of the case are few and simple, and might
well be gathered from Ordelheide, Admr., v. Modern
Brotherhood of America, 226 Mo. 203, supra. A re-
statement will take but short space, and we will there-
fore restate the facts.

The defendant is chartered in the State of Iowa as
a fraternal beneficiary association and for some years

prior to, and at the time of, issuing a beneficiary cer-
tificate to one Walter L. Leek, of Missouri, in 1903, was
licensed in Missouri as a fraternal beneficiary associa-
tion. The certificate was for the sum of one thousand
dollars, as thus expressed therein:

"The Modern Brotherhood of America issues to
Walter L. Leek of Warrenton, county of Warren, State
of Missouri, this membership certificate, which entitles
him to membership in said fraternity, and in case of the
death of said member while in good standing, permits
his beneficiary to participate in the mortuary fund to
the amount of one full assessment on all members in
good standing in the fraternity not to exceed one thous-
and dollars, which shall be paid to legal representatives,
related to the member as . . . within ninety days
after said satisfactory proofs of such member's death
shall have been furnished by the beneficiary to the board
of directors at Mason City, Iowa."

The certificate contains the usual suicide clause
found in most certificates issued by associations of
kindred character. Suicide, whilst sane or insane, void-
ed the certificate. Leek committed suicide and his ad-
ministrator brings this suit.

I. In our judgment the majority opinion of the St.
Louis Court of Appeals, which accords with the Kansas
City Court of Appeals upon this question, is
**Insurance:** right. Our statute, Revised Statutes 1909,
**Suicide as** right. Our statute, Revised Statutes 1909,
**Defense.** section 7109, contains this provision:

"Payments of death benefits shall be to the fam-
ilies, heirs, blood relatives, affianced husband or affianced
wife of, or to persons dependent upon, the member."

This clause was likewise in the statute at the date
of the issuance of the certificate sued upon. The same
section contains an exemption clause, in this language:

"Such association shall be governed by this article,
and shall be exempt from the provisions of the insur-

ance laws of this State, and shall not pay a corporation or other tax, and no law hereafter passed shall apply to them unless they be expressly designated therein.''

This exemption clause was likewise in the statute at the issuance of the certificate involved here. In some particulars the old statute (Laws 1897, p. 132; Sec. 1408, Revised Statutes 1899) was amended in 1909 (Laws 1909, p. 371) but not so as to touch the question at issue in the instant case. The last clause is one purely of exemption. In Schmidt v. Foresters, 228 Mo. l. c. 700, we practically so said. We then used this language in discussing the Act of 1897:

''The Act of 1897 simply exempts fraternal beneficiary associations from the general insurance laws. By thus exempting them the Legislature recognized that but for the exemption, their contracts would be governed by the general laws, for if not, there would be no reason for the exemption.

''Nor is it unreasonable to say, as was said in the Jarman case (Indemnity Co. v. Jarman, 187 U. S. 197), that the defendant in the case at bar cannot claim the benefits of an exemption provided by a law, until such time as it places itself in a position to claim the benefits of the law. It cannot claim the benefits of the law merely because its contracts are of the character mentioned in the law, but to claim the exemption given, it must come under the law, and makes its contracts under the law. If it does that, then the law is read into and becomes a part of the contract, but until it does do that the general law is and must be read into each and every one of its contracts made with a citizen of Missouri. Not only so, but if such general law once becomes a material constituent part of the contract, it cannot be eliminated therefrom by the subsequent act of the defendant. And we are of opinion that the suicide statute is substantial law, and not merely a statute of procedure.''

There, as here, we had an association which in its organization was clearly a fraternal beneficiary association. There, as here, the certificate was in the form usually issued by such an association. There is this difference, however: in the Schmidt case the beneficiary named was the mother of the insured, whilst here the beneficiary named is "legal representatives."

We held in the Schmidt case that the defendant could not avail itself of this exemption clause, because it had not availed itself of our fraternal beneficiary association laws by taking out a state license prior to the issuance of the certificate. We held further that the general law as to suicide applied, notwithstanding the character of the association issuing the certificate, and notwithstanding the form of the certificate. And all this for the reason the defendant was not protected by this exemption clause, because not acting under our law pertaining to fraternal beneficiary associations. We then said and now repeat "but to claim the exemption given it (the association) must come in under the law, *and make its contracts under the law.*" The italics have been added in making the quotation here, but our language was carefully measured then, because we were then, as now, settling a dispute between the two courts of appeals.

In the case at bar the defendant did not issue its contract of insurance under our Fraternal Beneficiary Association Act, because under that act it could not make "legal representatives" beneficiaries in the contract. It is true that it had license to issue policies under our law, but it did not see fit so to do. It preferred, in violation of our law, to issue a policy authorized by its charter powers in Iowa, rather than one authorized by its license in Missouri. Its measure of authority for legitimate business in Missouri, is our statute. The test of the character of the policy it issues is the statute, and not the license it may have obtained.

In State ex rel. v. Vandiver, 213 Mo. l. c. 198, VALLIANT, J., well said:

"The character of the relator is an essential fact to be shown in this case, because unless it is a fraternal society, as defined by the statute, it has no right to do even the limited kind of life insurance that the statute authorizes; but the fact that it does entirely fill that definition does not authorize it to go beyond the limit prescribed by the statute. If the relator while issuing only such life insurance policies as the statute authorizes and holding a license from the Insurance Department should be called into court to answer by what authority it is issuing such policies it would be sufficient to say: We are a fraternal society, with our lodge system, our ritual, our representative form of government and we are not doing this for profit. *But if it is issuing policies of a character not authorized by the statute, then its fraternal character, its lodge system, its ritual, its form of government, and its no-profit plan, would be no answer or justification of its conduct.*

"In Toomey v. Supreme Lodge, 147 Mo. 129, it was held that the defense of suicide was unavailing because, although the defendant was a fraternal beneficiary society, yet the policy sued on was an old-line policy of life insurance and therefore subject to the general statute, and the defendant was liable as an old-line company would be.

"In Aloe v. Fidelity M. Life Assn., 164 Mo. 675, it was held that although the defendant was chartered to do business only on the assessment plan, yet the policy it had issued in that case was not on that plan but an old-line policy and therefore the defendant was held liable as an old-line company. Other cases to the same effect are referred to in the opinions in those cases."

We have italicized some pointed language of the distinguished judge writing that opinion. In that

case the relator was clearly a fraternal beneficiary association, and was chartered as such, but it was seeking license to do business not authorized by our law pertaining to fraternal beneficiary associations. This emphasizes the fact that the character of the business done, and the policy issued, is not measured by the character of the organization, but by the law which prescribes the character of the policy which can be issued under that law. If the policy issued is not one authorized by the law, the association issuing it cannot avail itself of the exemption given in the law. This is reasonable, because an exemption is in the nature of a privilege granted, and such privilege ought not to be granted, unless the association in all its doings comes in fairly and squarely under the law giving the exemption or privilege.

. Such seems to be the view taken by the majority opinion of the St. Louis Court of Appeals, and also by the Kansas City Court of Appeals in some three cases, cited in that opinion.

. If such foreign fraternal beneficiary society is duly licensed in this State, it can issue certificates or policies, as authorized by our laws, and as to such can claim the benefits of the exemption, but if it issues a policy not authorized by our law it has no right to claim the exemption.

For a fuller discussion I leave this question to the majority opinion of the St. Louis Court of Appeals in this case, and to the following cases by the Kansas City Court of Appeals: Herzberg v. Modern Brotherhood of America, 110 Mo. App. 328; Wilson v. Benevolent Assn., 125 Mo. App. 597; Kroge v. Modern Brotherhood of America, 126 Mo. App. 693: Dennis v. Modern Brotherhood of America, 119 Mo. App. l. c. 214.

II. In the dissenting opinion it is learnedly argued that the construction of the words "legal representatives" as given by the majority opinion contravenes certain rulings of this court. We do not think so. We are cited to Loos, Guardian, v. Life Insurance Co., 41 Mo. 538, and Ewing v. Shannahan, 113 Mo. l. c. 194, and some cases from our Courts of Appeals.

**Legal Representative.**

The meaning of words must be gathered from the context. Generally speaking "legal representatives" do not mean heirs, but in some cases, owing to the peculiar manner in which the words have been used, they have been construed to mean "heirs." But let us get the situation here. It is clear that this defendant was issuing policies or certificates under its charter powers. Its charter powers must be sought from the Iowa fraternal beneficiary association act. As to beneficiaries, that law reads:

"No fraternal association created or organized under the provisions of this act shall issue any certificate of membership to any person under the age of fifteen years, nor over the age of sixty-five years, *nor unless the beneficiary under said certificate shall be husband, wife, relative, legal representative, heir or legatee of such member.*"

Note the language of this law. It not only uses the term "legal representative," but also the term "heir." In the connection in which the term "legal representative" is here used, it cannot be said to mean "heir" without convicting the Legislature of pure ignorance. The Legislature was determining who should be made beneficiaries coming under the law, and it procceded to name the different classes. In so doing the Legislature made "legal representative" one class of beneficiaries and "heirs" another class. These two are, and were intended to be just as distinct, as the classes of "husband," "wife," "relative" or

"legatee." Under this statute the term "legal representative" cannot be construed to mean "heir." It can only be construed as the majority opinion construed it. When Leek applied for the certificate he named "legal representative" as the beneficiary. The certificate was so issued, and when we consider the Iowa law under which defendant was chartered, it is clear that the parties understood "legal representative" in the sense of personal representatives and not in the sense of heirs.

On this state of facts, this court has never adjudged "legal representatives" to mean "heirs," nor have we so done under any similar state of facts. That this policy was issued with the Iowa law in view there is no question. That the Legislature of that State never used the term "legal representative" in the sense of "heirs" is apparent, because of the use of both terms. The fact that under our law a "legal representative" cannot be made a beneficiary does not change the situation. It is clear that the parties intended the amount of the policy to go to the estate.

By the judgment of the circuit court, it so went. Let that judgment be affirmed. It is so ordered. All concur except *Woodson, J.,* absent.