# CORA I. ANDRUS v. BUSINESS MEN'S ACCIDENT ASSOCIATION OF AMERICA, Appellant.

### Division Two, June 25, 1920.

1. **CONSTITUTIONAL LAW: Suicide Statute.** Section 6945, Revised Statutes 1909, declaring suicide shall not be a defense in actions upon policies of life insurance, is a valid and constitutional statute.

2. **————: Liberty of Contract: Corporation.** Even though a statute were unconstitutional in that it abridges liberty of contract and the right of an individual to make such contracts as he sees fit, it would not for that reason be invalid as to corporations. The State may prescribe the terms and conditions upon which a corporation may be organized and empowered to transact business, and it may altogether forbid a corporation of a designated kind, for instance, an accident insurance company, from doing business in the State.

3. **————: Accident Insurance: Suicide As Defense: Public Policy.** The propriety and policy of a statute are not matters that concern the courts. It is for the Legislature to determine whether a statute declaring suicide to be no defense to an action on an insurance policy places a premium on suicide and is inimical to the public welfare and to public morals.

4. **ACCIDENT INSURANCE: Issued by Assessment Company: Suicide As Defense.** If an insurance company is organized as an assessment company under the statutes pertaining to assessment companies and issues a policy not authorized by them, it cannot avail itself, in a suit upon the policy, of the exemption from liability provided by them for such companies. If it is organized as an assessment company, whether it be a domestic or foreign company, and the amount it agrees to pay in case of death is in no wise dependent upon the collection of an assessment upon persons holding similar contracts, the defense that the insured committed suicide is not available in a suit on the policy; for such a policy is not a contract on the assessment plan.

5. **————: Suicide: While Sane: Accidental Means: Admission.** An allegation in the petition that the insured came to his death "exclusively of all other causes contributing or proximate, through external, violent and accidental means, to-wit, by the drinking of carbolic acid" is not an admission of suicide, but an allegation

that the death was accidental; and evidence tending to show that deceased intentionally took carbolic acid is not conclusive of the fact, and even if it were proven that he took it intentionally that would not be conclusive proof that he was sane at the time. Under such circumstances, the issue whether his death was accidental was one for the jury, under proper instructions.

6. ———: ———: Accident: Intentional. If the insured's death was produced by means unexpected, unintended and unanticipated, it was accidental; if the act and the result produced were exactly in accordance with the intention of the actor, it was not accidental. If the insured was sane, fully conscious of the effect of his act in taking poison, and consequently intended to inflict death upon himself, then the death which he inflicted in pursuance of that intention was not accidental. But even though he took carbolic acid, his resultant death was accidental, if he were insane; to be intentional, he must at the time have been sane, for if insane he was incapable of forming an intention.

7. ———: ———: Intentional: Instruction. Where there is evidence that the insured's death was caused by taking carbolic acid with the intention of committing suicide, it is error, in a suit on an accident policy, to simply instruct the jury that it is "no defense that the insured committed suicide, unless the jury find and believe from the evidence that the insured contemplated suicide at the time he made application for the policy." It would be proper if it limited the suicide to death self-inflicted while the insured was insane; but suicide if committed intentionally is not accidental.

8. ———: Insured's Age: Old-Line Policy. If the contract of insurance was not one authorized by the statutes relating to insurance companies doing business on the assessment plan, the fact that the insured was sixty-one years of age at the time he made application for the insurance is no defense to a suit on the policy. Section 6956 of the Assessment Insurance Act provides that "no corporation doing business under this article shall issue a certificate or policy upon the life of any person who is more than sixty years of age," but if the policy was not one provided for by the article the company was not "doing business under this article," for the section necessarily does not apply to a policy issued upon some plan other than the assessment plan.

9. EVIDENCE: Abandoned Pleading. An abandoned pleading is admissible in evidence, but is not conclusive of the fact alleged; it is to be weighed like any other admission.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield*, Judge.

REVERSED AND REMANDED.

Solon T. Gilmore and Gilmore & Brown for appellant.

(1) An allegation that the insured committed suicide does not state a cause of action under a policy insuring against death resulting from accidental means. Defendant's objection to the introduction of any evidence, for the reason that the petition did not state facts sufficient to constitute a cause of action, should, therefore, have been sustained. Brunswick v. Ins. Co., 213 S. W. 45; Logan v. Fid. & Cas. Co., 146 Mo. 114; Laessig v. Assn., 169 Mo. 272; Travelers Ins. Co. v. McConkey, 127 U. S. 661; Whitlatch v. Casualty Co., 149 N. Y. 45; Tuttle v. Assn., 132 Iowa, 652; Accident Co. v. Crandall, 120 U. S. 527; Blackstone v. Ins. Co., 74 Mich. 592; Insurance Co. v. Peters, 42 Md. 414. (2) Liberty guaranteed by the Constitution of Missouri, includes freedom of contract. State v. Loomis, 115 Mo. 307; Allegeyer v. Louisiana, 165 U. S. 578; Ex parte Drexel, 147 Cal. 763. (3) Freedom of contract is inviolate except as it may be restricted and abridged by the State under its police power. State ex inf. v. Standard Oil Co., 218 Mo. 1; Ex parte Drexel, 147 Cal. 763. (4) The police power is the power to prescribe regulations for the public safety, the public health the general welfare and the public morals. Sloan v. Railroad, 61 Mo. 24; State ex rel. v. Greer, 78 Mo. 188; State ex rel. v. Associated Press, 159 Mo. 410; Powell v. Railroad, 255 Mo. 420; State v. Railroad, 242 Mo. 339; Barber v. Connelly, 113 U. S. 27; Weber v. Virginia, 103 U. S. 344. (5) The Legislature may not enact a bill under the police power unless it be a proper exercise of that power. State ex rel. v. Associated Press, 159 Mo. 410; State ex rel. v. Gas Light Co., 102 Mo. 472; State v. Tower, 185 Mo. 79; State v. Addington, 77 Mo. 117; State ex rel. v. Ashbrook, 154 Mo. 375; Mugler v. Kansas, 123 U. S. 661. (6) Sec. 6945, R. S. 1909, is an abridgement of the right of contract. Ex parte Harrison, 212

Mo. 88; Gladney v. Sydnor, 172 Mo. 328. (7) The statute is an incitement and a temptation to holders of life insurance policies to commit suicide, and is, therefore, in violation of Secs. 1, 4 and 30, Art. 2, Mo. Constitution. Ritter v. Ins. Co., 139 U. S. 169. (8) The section in question violates Sec. 5, Art. 12, Mo. Constitution, in that, it requires corporations to conduct their business in such a manner as to infringe the general well being of the State. State v. Railroad, 242 Mo. 339. (9) The section in question violates Article 3 of the Constitution, in that, it is an attempt of the Legislature to infringe upon the powers of the courts. Ziegler v. Railroad, 58 Ala. 594; Hoke v. Henderson, 5 Dev. Law. 1. (10) The plaintiff in her proofs of loss having admitted that her husband was sixty-one years old, is bound thereby in the absence of positive testimony that her statement of his age was incorrect. Castens v. K. & L., 190 Mo. App. 57; Stevens v. Ins. Co., 190 Mo. App. 673. (11) The policy issued to Vincent R. Andrus was not within the powers of the defendant to issue, and is null and void. Sec. 6956, R. S. 1909; Cass Co. v. Ins. Co., 188 Mo. 1; City v. Bank, 74 Mo. App. 365; Froehley v. Ins. Co., 32 Mo. App. 302.

*James C. Smith* for respondent.

(1) The policy sued upon makes of the contract "old line insurance." The policy provides for a fixed and definite sum to be paid at the time of the delivery of the policy and a fixed and definite sum to be paid quarterly thereafter. There is no provision made in said policy for any variation of those terms. There is no reference made in that policy to any by-laws of the order, nor is any reference made to any assessment or collections of premiums or any other sums from any other member of the order. R. S. 1909, sec. 6950; Toomey v. Supreme Lodge, K. P., 147 Mo. 129; Aloe v. Life Assn., 164 Mo. 675; Logan v. Casualty Co., 146 Mo. 115; Williams v. Ins. Co., 189 Mo. 70; Jacobs v. Life Assn., 146 Mo. 523; Wilson v. Benevolent Assn., 125 Mo. App. 597; Kribbs v. United

Order of Foresters, 191 Mo. App. 524; Jennings v. National American, 179 S. W. 789; Young v. Ry. Mail Assn., 126 Mo. App. 332; McDonald v. Life Assn., 154 Mo. 618. (2) If insured had been at issuance of policy sixty-one years of age, the policy issued is not null and void. The doctrine of *ultra vires* may not be invoked. The statute does not declare such policies void. Cass County v. Ins. Co., 188 Mo. 15.

WHITE, C.—The plaintiff sued as the widow of Vincent R. Andrus, deceased, upon a policy of life insurance issued to him by the defendant. The contract is what is termed an accident policy and insured against "loss resulting from bodily injuries, effected directly, independently and exclusively of all other causes contributing or proximate, through external, violent and accidental means (excluding suicide, sane or insane)."

It is alleged in the petition that the insured met his death "from bodily injuries, effected directly, independently and exclusively of all other causes contributing or proximate, through external, violent and accidental means, to-wit, by the drinking of carbolic acid on said 20th day of May, 1915."

Plaintiff prayed judgment for three thousand dollars, the amount named in the policy for loss of life.

Defendant filed an answer containing, first, a general denial; second, an allegation that Vincent R. Andrus at the time of the acceptance of the application and issuance of the policy was 61 years of age at his nearest birthday, that the defendant was a corporation organized under Article III, Chapter 61, Revised Statutes 1909, pertaining to insurance on the assessment plan, and was licensed to do business on that plan, and the policy issued was therefore prohibited by the statute of Missouri and was *ultra vires*; third, averments that the policy contained a provision excluding liability for suicide, voluntary or involuntary, sane or insane, and Andrus voluntarily committed suicide by drinking carbolic acid with suicidal intent; and that Section 6945, Revised Statutes 1909, the

suicide section, is unconstitutional, in violation of Section I of Article II, Section 4 of Article II, Section 30 of Article II, and Section 5 of Article XII, of the Constitution of Missouri.

Plaintiff introduced the policy and proofs of death. she swore that she didn't know how old her husband was at the time of his death.

The defendant offered its articles of association framed under the provisions of Article III, Chapter 119, Revised Statutes 1899, now Article III, Chapter 61, Revised Statutes 1909.

There was a second count in the petition, but it is stated that it was dismissed and the trial proceeded upon the first count. The terms of the policy and the statements in the application, the character of the company shown by its articles of association and the business transacted, and other facts, will be considered in treating of the several questions arising in the case. There was a judgment for plaintiff for the amount sued for and defendant appealed.

I. Appellant attacks the constitutionality of Section 6945, Revised Statutes 1909, which declares suicide shall not be a defense in suits upon policies of life insurance, and asks this court to examine that statute and the Suicide Statute. reasons advanced for its alleged conflict with certain provisions of the Constitution of Missouri, as mentioned in the answer. The argument is that it is unconstitutional because it abridges the right of contract; the constitutional guaranty of the right to liberty includes the right to make such contracts as the individual sees fit.

If the argument of appellant was sound as applied to individuals it would not necessarily apply to corporations which are creatures of the statute. This court has said in the case of Julian v. Kansas City Star, 209 Mo. 1. c. 66: "The Legislature in dealing with artificial creatures of the law may, in certain particulars, make them a class to themselves, and impose conditions upon them not

imposed upon individuals.'' And further, on page 67: "The State in issuing the charter may impose its own terms and when accepted the corporation is bound by the terms.''

The State in prescribing terms and conditions upon which a corporation may be organized and may be empowered to transact business merely exercises the ordinary power vested in the sovereign state. It could forbid accident insurance companies from doing business in Missouri altogether, which it would be powerless to do in regard to natural persons. It can limit the activities of a corporation and prescribe the manner and conditions under which it may transact business in a way that could not be applied to individuals. This has been determined so often that argument in support of the distinction between artificial and natural persons is unnecessary. [N. W. Life Ins. Co. v. Riggs, 203 U. S. 243, l. c. 254; Applegate v. Travelers' Ins. Co., 153 Mo. App. l. c. 82-3; Houston v. Pulitzer Pub. Co., 249 Mo. l. c. 338.]

Appellant argues at length that the statute, by declaring suicide to be no defense to an action on an insurance policy, places a premium on suicide and is inimical to public welfare and to public morals. In that argument the appellant merely attacks the propriety and the policy of the statute—a consideration which does not concern this court. It is within the discretion of the Legislature to determine the propriety of an enactment and decide whether it may have a beneficial effect upon the subject to which it applies, and that determination is not to be questioned by this court in determining the validity of the statute.

II. The appellant describes itself as a company formed upon the assessment plan within the provisions of Article III, Chapter 61, Revised Statutes 1909. That raises the question as to whether the suicide statute, Section 6945, would apply to policies issued by it and whether Section 6956, Revised Statutes 1909, limiting the issuance of a policy to one under 60

Suicide as Defense.

years of age is applicable to policies of this company.

Section 6950, Revised Statutes 1909, defines a contract of insurance upon the assessment plan as one where the payment of the benefit is in "any manner or degree dependent upon the collection of an assessment upon persons holding similar contracts."

It has been held by this court that a fraternal benefit association, if it issues contracts of insurance which do not depend upon the collection of assessments but provide for the payment of fixed sums—in other words, old-line policies—is bound by such contracts. [Toomey v. Supreme Lodge K. P., 147 Mo. 130, l. c. 138-9; Aloe v. Fidelity Mut. Life Assn., 164 Mo. l. c. 687; McDonald v. Life Assn., 154 Mo. 618, l. c. 627 (citing cases).]

In the case last cited it is said that the amount to be paid in case of death "does not depend in any manner upon the collection of an assessment upon persons holding similar contracts, and that is the test under our statutes as to whether or not a company is an assessment company." And further on page 628: "For it devolves upon the defendant to show not only that it is an assessment company, but that the policy as issued is such a policy as an assessment company is authorized to issue, otherwise it is bound by its contract and is estopped to plead that the contract is *ultra vires.*"

If a company organized under Article III of the Insurance Chapter issues a policy not authorized by that article, it can not avail itself, in a suit upon such policy, of the exemptions from liability provided for such companies. [Ordelheide v. Modern Brotherhood, 268 Mo. 346-7.]

In this case the policy issued to the deceased provides for the payment of a fixed assessment of six dollars on the fifteenth day of March, June, September and December of each year. The benefit to be paid is a definite fixed sum of three thousand dollars upon the loss of life and the performance of the conditions relating to proofs of loss. There is nothing in the policy to indicate that the payment of the benefit is in any manner or degree

dependent upon the collection of assessments upon persons holding similar contracts. It is therefore not a contract upon the assessment plan as defined by the statute. [Williams v. Ins. Co., 189 Mo. 70, l. c. 81.]

The suicide statute, Section 6945, provides that it shall be no defense that the insured committed suicide unless he contemplated suicide at the time he made the application for insurance. That section is in Article II of Chapter 61, entitled "Life and Accident Insurance." Section 6959, Revised Statutes 1909, found in Article III relating to Fraternal Benefit Insurance, after providing for annual reports, has this proviso:

"And all such foreign companies are hereby declared to be subject to, and required to conform to the provisions of Sections 6945, 7042, 6937 and 6940 of the Revised Statutes of Missouri of 1909, and governed and controlled by all the provisions in said sections contained: *Provided, always,* that nothing herein contained shall subject *any corporation doing business under this article* to any other provisions or requirements of the general insurance laws of this State, except as distinctly herein set forth and provided."

It may be noted that at the time of the issuance of the policy which this court had under consideration in the Ordelheide case, 268 Mo. 339, supra, Section 1408, Revised Statutes 1899, then in force, contained this clause:

"Such associations shall be governed by this act and shall be exempt from the provisions of the insurance laws of this State, and shall not pay a corporation or other tax, and no law hereafter passed shall apply to them unless they be expressly designated therein."

And that clause appears in substantially the same form in Section 7109, Revised Statutes 1909.

The question determined in that case was *not* whether the exemption clause in Section 6959 relieved *fraternal benefit societies* of the restriction in Section 6945, but whether the *policy* issued was one to which the exemption applies, and it was held the policy was such that suicide was no defense because Section 6945 applied.

The proviso quoted from Section 6959 applies to "all such *foreign* insurance companies." The defendant in this case is a domestic company. The Kansas City Court of Appeals has held that the suicide statute is applicable to *all* policies issued by assessment companies whether domestic or foreign, on account of the language of Section 6959, quoted above in italics. [Gates v. Aid Association, 198 Mo. App. 688; Anderson v. Missouri Benefit Assn., 199 S. W. 740-741.]

The policy in this case is not one upon the assessment plan and for *that reason,* under the ruling in the Ordelheide case, suicide is no defense to an action on it provided suicide is an accident within the terms of the policy.

III. The point made by appellant is that the plaintiff should not recover because it is admitted the insured committed suicide while sane and that the death was not, therefore, the result of "accidental means."

Accidental Suicide.

It is well to note the issue as presented in the pleadings and supported by the evidence. The allegation of the petition is that the insured came to his death, "Exclusively of all other causes contributing or proximate, through external, violent and accidental means, to-wit, by the drinking of carbolic acid." This is not an allegation of suicide, it is an allegation that the death was accidental in the drinking of carbolic acid. The answer alleges that the insured "died as a result of drinking carbolic acid with suicidal intent."

The evidence upon that point appears in various documents, the most important of which is a letter addressed to the company by the plaintiff's attorney after the death wherein he refuses to accept a check sent by the company in repayment of the assessments which had been paid by the insured. The repayment was offered on the ground that the insured was of an age beyond the insurable limit of 60 years. [Sec. 6956, R. S. 1909.] The letter contains this statement: "In reference to the

clause, 'Even if we could there would be no liability in this case on account of the manner and circumstances of his death,' we concede that Mr. V. R. Andrus came to his death by carbolic acid poisoning self-administered by him for the purpose of ending his life, or in other words committing suicide. However under the laws of this State suicide is not a defense on a claim under an accident insurance policy. Therefore, we renew our demand upon you for the full payment under the policy.''

The certificate of the coroner who viewed the body appears in proof of loss and states that in his judgment the cause of death was ''carbolic acid poisoning and to the best of my knowledge such carbolic acid was self-administered.''

One C. F. Jennings stated in the proofs of loss: ''Cause of death. Carbolic acid poisoning.''

The attending physician made the same statement. This is all that appears in the evidence as to the manner and cause of the insured's death. This does not prove conclusively that the insured took the carbolic acid with the intention of committing suicide. The admission in the letter of the attorney would be evidence tending to show that he took it intentionally, but it would not be conclusive of that fact, and if it were proven that he took it intentionally that would not be conclusive that he was sane at the time.

This court in the case of Lovelace v. Travelers' Protective Assn., 126 Mo. 104, quoted a number of definitions of accident, not only from the dictionaries, but from reported cases in a number of states. In none of them is an ''accident'' defined so as to include an intentional act. Where a result is produced by a means unexpected, unintended and unanticipated, it is accidental; but if the act and the result produced are exactly what was in accordance with the intention of the actor it was not accidental.

In this case the plaintiff can recover only if death was produced by accidental means. If the insured was sane, fully conscious of the effect of his act, and consci-

ously intended to inflict death upon himself, then the death which he inflicted in pursuance of that intention was not accidental.

In the recent case of Brunswick v. Standard Accident Insurance Co., 278 Mo. 154, 213 S. W. 45, this court reviewed the authorities at great length in construing a clause similar to the one under consideration here. The following rules may be deduced from the holding in that case:

(a) If the deceased committed suicide while insane his beneficiary could recover and Section 6945 removes the defense of suicide.

(b) If the insured, while sane, for the purpose of committing suicide intentionally swallowed poison, his consequent death was not accidental within the meaning of the policy. [l. c. 166.]

(c) After it was shown that the insured swallowed the poison and the question arose whether the act was accidental or intentional, a presumption arises from the love of life, in the absence of evidence upon the point, that it was accidental and this presumption obtained until evidence was adduced in explanation of the act (l. c. 172.)

(d) If there was evidence upon the point in explanation of the manner in which the poison was taken, then the presumption ceased to exist and it became a question of fact whether the death, self-inflicted, was accidental or intentional. Unless the evidence shows conclusively that the insured was sane and intentionally took his own life so that the court might declare as a matter of law that the death was intentional, it was a question for the jury, from such evidence as was produced, to say whether the insured was sane or insane at the time, and whether if sane the death was inflicted intentionally or accidentally.

(e) The burden was on the defendant to prove that the death under such circumstances was intentional and not accidental; that is, the burden would be upon the defendant, in a case of suicide, to prove that the insured

was sane and committed the act which took his life with the intention of committing suicide.

It may be added that in the Brunswick case there was no evidence indicating that the insured was insane and there was considerable evidence indicating that he took cyanide of potassium with the intention of committing suicide. It was held that it was a question for the jury and the case should be submitted to the jury. [See also Reynolds v. Casualty Co., 274 Mo. l. c. 97; Scales v. National Life & Accident Ins. Co., 212 S. W. l. c. 9.]

In this case, under the evidence produced, the question should have been submitted to the jury with instructions drawn in accordance with the principles laid down in the Brunswick case. Instruction B, given on behalf of plaintiff is as follows:

"Even though the jury believe from the evidence that insured committed suicide, it shall be no defense that the insured committed suicide, unless the jury find and believe from the evidence, that the insured contemplated suicide at the time he made his application for the policy or certificate of insurance, and any stipulation in the policy to the contrary is void."

This instruction was erroneous because suicide if committed intentionally is not accidental. It would have been proper if it had limited the suicide to death self-inflicted while the insured was insane.

Instruction numbered 11 asked by the defendant and refused by the court, is as follows:

"The court instructs the jury that if you believe from the evidence that Vincent R. Andrus committed suicide, then his death was not accidental, unless you further believe from the evidence that at the time he drank carbolic acid, he was so insane as to be unconscious of the physical nature and consequences of his act."

That instruction is correct according to the doctrine announced in the Brunswick case and should have been given.

IV. The appellant asserts that the plaintiff is not entitled to recover because deceased was sixty-one years of age when the policy was issued to him in violation of Section 6956, Revised Statutes 1909, which provides: "No corporation doing business under this article shall issue a certificate or policy upon the life of any person who at nearest birthday is more than sixty years of age."

*Insured's Age: Over Sixty.*

As a matter of fact the evidence does not show that Andrus was more than sixty years of age. His application made on the tenth day of December, 1914, stated that he was sixty years of age. A previous application made April 30, 1913, stated that he was fifty-nine years of age. Mrs. Andrus, in her beneficiary statement presented to the defendant, gave her husband's birthday as September 7, 1853, which if true would make him 61 years of age the tenth of December, 1914, the time at which he made the application. But Mrs. Andrus in her testimony swore that she didn't know how old he was; whether he was 59, 60 or 61, and she didn't believe he himself knew how old he was. So far as the evidence goes it is not conclusively shown that his statement in the application is untrue.

But appellant bases its position upon an allegation in the second count in the plaintiff's petition to the effect that the defendant is estopped to deny liability on account of the insured's age, because it knew he was 61 years of age at the time they wrote the policy. It is said in the brief of respondent and not denied, although it dosen't appear clearly in the abstract of the record, that the second count was abandoned and that the trial proceeded upon the first count in the petition and a verdict rendered upon the first count. The second count was not afterwards introduced in evidence and therefore was not before the jury for the purpose of weighing the allegation as an admission of the plaintiff. The abandoned pleading was admissible in evidence, but was not conclusive as to the fact alleged. It could be weighed like any other admission of defendant. [Walser v. Wear, 141 Mo. 443; Ettenson v. Railroad, 248 Mo. l. c. 416.]

At the instance of the defendant the court instructed the jury if it believed from the evidence that Andrus, on the tenth of December, 1914, was more than sixty years of age, at his nearest birthday, the verdict must be for the defendant. So there was a finding by the jury that he was not over sixty years of age at the time.

Even if it were shown that he was over sixty years of age at the time he made the application it would not avail defendant in a suit on this policy. As we have seen above, the contract of insurance on which the suit is brought is not one authorized by Article III, Chapter 61, under which the appellant was organized; it was not a contract of insurance upon the assessment plan as defined in Section 6950, Revised Statutes 1909.

Section 6956 says that: "No corporation *doing business under this article* shall issue a certificate or policy upon the life of any person who is more than sixty years of age."

"Doing business under this article" means a policy *issued as provided for in the article on the assessment plan.* Necessarily it would not apply to a policy issued upon some other plan than the assessment plan, because it would not be business "done under this article." For that reason we think that the age of the defendant was immaterial in this case.

Because of the error of the trial court in giving instruction B on behalf of plaintiff, and in refusing to give instruction 11 asked by defendant, the judgment is reversed and the cause remanded. *Railey* and *Mozley, CC.,* concur.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.