THE STATE ex rel. ISAAC F. TAYLOR v. CHARLES H. DAUES et al., Judges of St. Louis Court of Appeals.

Division One, March 12, 1926.

**LIFE INSURANCE: Beneficiary Association: Medical Examination: Part of Certificate.** The certificate issued by a fraternal beneficiary association need not provide that the medical examination shall constitute a part of the agreement between the association and the member, and the association is not without the pale and protection of the statutes relating to such associations because it does not. The statute (Sec. 6405, R. S. 1919) declaring that every certificate issued by any such society shall provide that "the application for membership and medical examination, signed by the applicant" shall constitute a part of the agreement between the society and member, does not mean that the objective examination made by a professional medical examiner shall constitute a part of the agree-

ment, and the Court of Appeals in so holding contravened no prior decision of this court. A certificate reciting: "This certificate, together with the constitution and laws of the society, and all amendments thereof, and the application for membership, which is made a part hereof, shall constitute the agreement between the member and the society," complies with the statute, and its failure to include the medical examination made by a physician did not convert the association into an old-line insurance company, nor relieve the member against false answers contained in her application.

Certiorari, 11 C. J., Section 265, p. 176, n. 19 New. Courts, 15 C. J., Section 518, p. 1092, n. 63. Mutual Benefit Insurance, 29 Cyc., p. 63, n. 5. Statutes, 36 Cyc., p. 1107, n. 36.

*Certiorari.*

WRIT DISMISSED.

*Benj. J. Klene* for relator.

(1) To state in a policy of life insurance that: "This certificate, together with the constitution and laws of the society, and all amendments to each thereof, and the application for membership, which is made part hereof, shall constitute the agreement between the member and the society," does not comply with the requirements of the statute. R. S. 1919, sec. 6405. (2) "If such a foreign fraternal beneficiary association is duly licensed in this State, it can issue certificates or policies as authorized by our laws, and as such can claim the benefit of such exemption, but if it issues a policy not authorized by our law it has no right to claim the exemption." Andrus v. Accident Assn., 283 Mo. 449; Ordelheide v. M. B. A., 268 Mo. 346; Schmidt v. Foresters, 228 Mo. 675; Pope v. W. O. W., 207 Mo. App. 597. (3) "In this State it is settled that it is not the nature of the society, but the terms of the contract in suit, which determines whether its exemption from the general statute shall apply in that case." Toomey v. Supreme Lodge, 147 Mo. 128; McDonald v. Life Assn., 154 Mo. 618. (4) "If the policy issued is not

one authorized by law, the association issuing it cannot avail itself of the exemption given it in the law. This is reasonable, because an exemption is in the nature of a privilege granted, and such privilege ought not to be granted unless the association, in all its doings, comes in fairly under the law giving the exemption or privilege.'' Ordelheide v. M. B. A., 268 Mo. 346; Andrus v. Assn., 283 Mo. 450. (5) ''Being a Missouri contract, the statute then in force, with respect to the subject-matter of the contract, entered into and became a part thereof, as much so as if copied therein.'' Cravens v. Ins. Co., 148 Mo. 583. (6) ''The statute is not directory only, or subject to be set aside by the company with the consent of the assured, but is mandatory, and controls the nature and terms of the contract into which the company may induce the assured to enter.'' (Quoted with approval from Society v. Clements, 140 U. S. 233, in a case affecting a Missouri contract.) Schmidt v. Foresters, 228 Mo. 699.

*W. Paul Mobley* and *A. W. Fulton* for respondents.

(1) The opinion of the Court of Appeals is in complete harmony with the latest controlling decisions of the Supreme Court. State ex rel. Knights of Security v. Allen, 269 S. W. 388. (2) The opinion is in accord with previous decisions of the Supreme Court bearing upon the question involved. Armstrong v. Modern Bro. of Am., 245 Mo. 153; Wilson v. American Yeomen, 297 Mo. 655; Tice v. Knights of Pythias, 204 Mo. 349, 122 Mo. App. 85; Westerman v. Supreme Lodge, 196 Mo. 670. (3) If the contract made by the defendant association does not comply with the statute, yet there would be no logical reason for going to the extreme length of declaring its contract an old-line contract. If it could not be construed to be a fraternal beneficiary society contract, it then must necessarily be construed as a contract for insurance on the assessment plan, and contracts of assessment insurance are exempt from the statutory provision requiring

deposit of premiums in court before making the defense of breach of warranty. R. S. 1919, chap. 50, art. 3; sec. 6164; Easter v. Am. Yeomen, 172 Mo. App. 292.

SEDDON, C.—The instant proceeding was begun here by relator for the purpose of having quashed the opinion and judgment of the St. Louis Court of Appeals in a cause entitled, Isaac F. Taylor, respondent, v. Security Benefit Association of Topeka, Kansas, appellant, in which cause relator had judgment in the Circuit Court of the City of St. Louis. The St. Louis Court of Appeals reversed the judgment *nisi*. [Taylor v. Benefit Association, 270 S. W. 132.] Relator contends that the opinion and judgment of the Court of Appeals contravene controlling decisions of this court.

The opinion of the Court of Appeals, which constitutes the record here, discloses and expressly finds that the Security Benefit Association is a fraternal beneficiary association organized under the laws of the State of Kansas and duly authorized to transact business in Missouri. The original action was brought by Isaac F. Taylor (relator here) to recover upon a death-benefit certificate in which he is the named beneficiary, issued by said association to relator's wife, Margaret F. Taylor, as the insured. The insured became a member of the beneficiary association on December 7, 1920. Her application for membership was taken at Eldon, Missouri, and the benefit certificate was delivered to the applicant at that place. The application for membership was signed by said Margaret F. Taylor and contains, among others, the following medical questions, with her answers thereto, concerning the state of her health and family and medical history:

"Q. Have you now or have you ever had la grippe, gallstones, palpitation of the heart, shortness of breath, any disease of the heart, or any symptoms of the disease of the heart? A. No.

"Q. Are you in good health at the present time? A. Yes.

"Q. Have you been under the care of or consulted any physician or surgeon concerning yourself within five years ? A. Yes.

"Q. If so, what ailment, name and address of each physician and surgeon and give dates. A. Childbirth, December 5, 1918."

The questions and answers in the application are followed by this clause:

"And I hereby declare that the foregoing answers and statements are true, full and correct, and I acknowledge and agree that the said answers and all statements shall be held to be warranties, and with this application shall be considered a part of my beneficiary certificate, and together with the constitution and laws of the association as now existing or hereafter amended or enacted shall constitute parts of my contract with the association."

Pursuant to the uniform practice of the association, the above-mentioned application for membership was taken by the examining physician, partly in the form of medical questions and answers relating to the applicant's present and antecedent condition of health, as well as that of her children, ancestors and other relatives, and when so taken was signed by applicant, and was then sent by the examining physician to the head office of the association. The examining physician also made a report of his personal objective examination of the applicant, which was signed by the physician, but not by the applicant. It also was sent to the head office of the association. When the application, signed by the applicant, and the physician's report of his personal objective examination of the applicant were received by the head office of the association, they were first delivered to the national medical examiner of the association and, after having been examined and approved by him, they were then delivered by him to the national secretary, who thereupon issued the benefit certificate in question.

The benefit certificate, insofar as it bears upon the legal question before us, is as follows:

"In consideration of the pledges and agreements of the said member, and in further consideration of the first monthly contribution of $1.80 paid before or at the time of the delivery of this certificate, and thereafter $1.80 to be paid monthly to the financier of the local council, the Security Benefit Association promises to pay a death benefit to Isaac F. Taylor, related to said member as husband, in the sum of one thousand dollars, within ninety days after receipt of satisfactory proof of the death of said member while in good standing and not in default of the payment of required contributions.

"This certificate, together with the constitution and laws of the society, and all amendments to each thereof, and the application for membership, which is made a part hereof, shall constitute the agreement between the member and the society."

The insured, Margaret F. Taylor, died on February 11, 1922, her death being caused by gallstones and valvular disease of the heart. It was shown in evidence by the beneficiary association that insured was under the treatment of a physician in March and June, 1920; that at these times, while under treatment, she was at her home confined to bed; that the treatment was for influenza or la grippe, enemia and endocarditis, with which she was suffering at the time of the treatment; that endocarditis is an inflammation, acute or chronic, of the lining of the heart; that at the time of these treatments the insured also exhibited symptoms of gallstones or a diseased condition of the gall bladder. Relator, at the trial *nisi,* admitted that insured was under treatment of a physician in March, 1920, for influenza, or la grippe, and also that she was under the treatment of a physician in June, 1920, which dates are less than one year prior to the signing of her application for membership in the association.

The beneficiary association or society defended upon the ground of breach of the warranties contained in in-

sured's signed application for membership, relating to her condition of health and treatment by a physician prior to the issuance of the benefit certificate sued upon by relator as beneficiary. Relator insisted *nisi*, upon appeal, and still insists in the instant proceeding, that the benefit certificate does not comply with the statute relating to fraternal beneficiary associations in that it does not, in express words, provide that the *medical examination, signed by the applicant,* shall constitute a part of the agreement of insurance between the society and the member; hence, it is claimed that the beneficiary association is without the pale and protection of the statute relating to such associations, which exempts such associations from the general insurance laws of this State, but is amenable to a general statute relating to old-line life insurance companies, which provides that "in suits brought upon life policies, no defense based upon misrepresentation in obtaining or securing the same shall be valid, unless the defendant shall, at or before the trial, deposit in court for the benefit of the plaintiffs, the premiums received on such policies." [Sec. 6145, R. S. 1919.] No part of the premiums received on the benefit certificate in question was deposited in court by the beneficiary association.

Section 6404, Article 15, Chapter 50, Revised Statutes 1919, relating to fraternal beneficiary associations, provides: "Any society may admit to beneficial membership any person not less than twelve and not more than sixty years of age, who has been examined by a legally qualified physician and whose examination has been supervised and approved in accordance with the laws of the society."

Section 6405, Revised Statutes 1919, of the same article and chapter, provides: "Every certificate issued by any such society shall specify the amount of benefit provided thereby, and *shall provide* that the certificate, the charter or articles of incorporation, or, if a voluntary association, the articles of association, the constitution and

laws of the society, *and the application for membership
and medical examination, signed by the applicant,* and
all amendments to each.thereof, *shall constitute the agree-
ment between the society and the member.*"   (Italics are
ours.)

The benefit certificate here in question provides:
"This certificate, together with the constitution and laws
of the society, and all amendments to each thereof, and
the application for membership, which is made a part
hereof, shall constitute the agreement between the mem-
ber and the society."

The Court of Appeals ruled the benefit certificate to
be in substantial compliance with the above-mentioned
statute. [Sec. 6405, supra.]   Apropos the question, that
court said (270 S. W. l. c. 134), in its opinion filed: "The
statute clearly requires as a prerequisite for admission to
beneficial membership that a medical examination of the
applicant be made by a legally qualified physician and
that the examination be supervised and approved in ac-
cordance with the laws of the society.   The statute also
apparently requires that the medical examination be
signed by the applicant and made part of the insurance
agreement.   These requirements are manifestly for the
protection of the society.   The only reason for requiring
the medical examination to be signed by the applicant is
because the applicant is to be bound by it.   It certainly
is not intended, however, that the applicant shall be
bound by the findings or conclusions of the examining
physician.   It is intended only that the applicant shall
be bound by the answers and statements made by her in
the examination.   The physician's findings and conclu-
sions upon his examination must necessarily depend in
large measure upon his professional learning and skill.
This is especially true of his objective examination.   To
hold that the statute intends the applicant to be bound by
the findings and conclusions of the examining physician,
we would have to give the statute a technical construc-
tion out of harmony with its manifest spirit and purpose.

We conclude that it is the subjective examination of the applicant, ordinarily consisting of questions propounded to the applicant and the answers and statements made in response thereto, which the statute intends shall be signed by the applicant and made part of the insurance agreement, and not the report of the examining physician of his findings and conclusions, made by him to the society. . . . The certificate in express terms provides that the application shall constitute a part of the insurance agreement, and the application itself provides that the answers and statements contained in the application shall be considered a part of the certificate and constitute a part of the contract between the parties. By thus making the application a part of the insurance contract, the medical examination, contained in and constituting a part of the application, is necessarily also made a part of the contract. This, we think, is a substantial compliance with the statute.''

Relator claims that the opinion and decision of the Court of Appeals is contrary to and in conflict with the following controlling decisions of this court: Cravens v. Insurance Co., 148 Mo. 583; Toomey v. Supreme Lodge, 147 Mo. 129; McDonald v. Banker's Life Assn., 154 Mo. 618; Schmidt v. Order of Foresters, 228 Mo. 675; Ordelheide v. Modern Brotherhood of America, 268 Mo. 339; and Andrus v. Accident Assn., 283 Mo. 442. We have carefully examined each and all of the above-cited decisions of this court and find no conflict with the opinion of the Court of Appeals in the instant case. In the Cravens case, the insurer was an old-line company whose form of application provided that the entire contract contained in the policy and application shall be construed according to the laws of the State of New York, the place of the company's incorporation. The company was licensed to do business in Missouri and the application was taken and the policy delivered in this State. We there held that the insurer was amenable to the statutes of this State and our statutes became a part of the contract of in-

surance. In the Toomey and McDonald cases, the insurer
in the one case claimed to be a fraternal beneficiary as-
sociation, and in the other case claimed to be an assess-
ment company. In both cases, the insurer pleaded suicide
as a defense to the suit upon the policy, claiming exemp-
tion from the general suicide statute applicable to old-line
companies. In both instances, this court held that it is
not the name or nature of the society, but the terms of the
insurance contract in suit, which determines its exemption
from the general insurance statutes; and, in both in-
stances, the insurance contract, by reason of its terms,
was held to be an old-line contract of insurance. In the
Schmidt case, the insurer was a fraternal beneficiary as-
sociation organized under the laws of a foreign state. It
was not licensed or authorized to do business in this State
until some thirty-six days after it had issued the policy
or certificate in suit. The insurer denied liability upon
the certificate because the insured had committed suicide,
the by-laws of the society and application for member-
ship providing that no benefits shall be due if death of
the insured member ensues by reason of suicide or self-
destruction. The beneficiaries of the certificate invoked
the protection of our general suicide statute, applicable
to old-line companies, which precludes suicide as a de-
fense, unless it be shown that the insured contemplated
suicide at the time of his application for insurance. It was
ruled that the foreign fraternal beneficiary association
could not claim the benefits of an exemption from the
general insurance laws allowed by the statutes applicable
to such an association until such time as it placed it-
self in a position to claim such benefits by obtaining a
license and authority to do business in this State under
such statutes. In so ruling, we then said: "But to claim
the exemption given, it (the association) must come in
under the law, *and make its contracts under the law.*"
In the Ordelheide case, the insurer was a fraternal bene-
ficiary association of a foreign state duly licensed to do
business in this State under our fraternal beneficiary as-

sociation statute. That statute provided that "payments of death benefits shall be to the families, heirs, blood-relatives, affianced husband or affianced wife of, or to persons dependent upon, the member." The benefit certificate at issue named, as the beneficiaries thereof, the "legal representatives" of insured, and furthermore provided that suicide, while sane or insane, voided the certificate. The insured committed suicide and the association claimed that the certificate was voided by such act of the insured. The plaintiff, administrator of insured's estate, brought suit, invoking the aid of our general suicide statute. Reiterating the above-quoted language of Schmidt's case, we held that the certificate, by naming the legal representatives of insured as beneficiaries, did not comply with the law of our State applicable to fraternal beneficiary associations, and, hence, that the association was not exempt from the application of the general suicide statute. We then said: "The character of the business done, and the policy issued, is not measured by the character of the organization, but by the law, which prescribes the character of the policy which can be issued under that law. If the policy issued is not one authorized by the law, the association issuing it cannot avail itself of the exemption given in the law." In the Andrus case, the insurer was a domestic corporation organized under our statute pertaining to insurance on the assessment plan. The policy issued excluded liability for suicide of the insured. The beneficiary invoked the aid of the general suicide statute. It was held that, because the insurer's policy provided for the payment quarterly of a fixed assessment, it did not comply with the statute governing insurance companies on the assessment plan and, hence, the company was not exempt from the general suicide statute applicable to other contracts of life insurance.

The facts in the foregoing cited decisions of this court differentiate those cases from the case at bar. None of those cases involved the identical and precise question

State ex rel. Taylor v. Daues.

which the St. Louis Court of Appeals ruled in its opinion under review here. We think the reasoning and logic of the Court of Appeals opinion is sound. While the statute (Sec. 6405, R. S. 1919) requires that every certificate of a fraternal beneficiary association or society shall provide that "the application for membership and medical examination, signed by the applicant" shall constitute a part of the agreement between the society and the member, such requirement must necessarily be for the benefit of the society rather than for the benefit of the insured member. We believe that, in using the term "medical examination" conjunctively with the term "application for membership," the Legislature must have intended and had in mind, in enacting the statute, the subjective medical examination of the applicant, based upon the applicant's answers in writing to the questions propounded touching the condition of applicant's health, medical and family history, concerning which the medical examiner could have no personal knowledge, rather than the objective examination made by a professional medical examiner, based upon his own personal findings and conclusions arrived at from a physical examination of the applicant. Furthermore, the applicant should not be bound by the personal findings and conclusions of the medical examiner; otherwise, if the medical examiner has made a wrong diagnosis of applicant's condition of health (which sometimes happens), then the applicant might be chargeable with breach of warranty or misrepresentation in the procurement of the contract of insurance. Such a construction would be most unreasonable from the standpoint of the applicant. In interpreting the legislative intent and purpose, courts must apply to the statute under review a reasonable, rather than a strained or absurd, construction. [36 Cyc. 1107; Darlington Lumber Co. v. Railway Co., 216 Mo. 658, l. c. 672.]

The opinion of the St. Louis Court of Appeals herein under review comports with and is in entire consonance with our own recent rulings in Armstrong v. Modern

Brotherhood of America, 245 Mo. 153; State ex rel. v. Reynolds, 287 Mo. 169; State ex rel. v. Trimble, 292 Mo. 371; and State ex rel. v. Allen, 306 Mo. 633. In the Armstrong case, the certificate or policy of insurance was payable to the wife and son of insured as beneficiaries. The beneficiaries came within the class of beneficiaries prescribed by our statute governing fraternal beneficiary associations. The law of the foreign state under which the insurance association was organized permitted the association to issue certificates of insurance to the legatees of insured, a class of beneficiaries not authorized by our own statute. It was contended by the beneficiaries of the certificate that the fact that the association was permitted by the law of the domicile to issue certificates in favor of beneficiaries not authorized by our own statute converted the association into an old-line insurance company, thereby making it amenable to the general insurance statutes of this state. In ruling the point, we said (245 Mo. l. c. 159): "We do not think the mere fact that a member of one of these fraternal organizations may procure a certificate payable to some person not specifically designated in the statute, should have the effect of destroying the purposes of the association and putting it in the same class as old-line companies."

A somewhat analogous question was ruled by Court in Banc in State ex rel. v. Allen, 306 Mo. l. c. 657, whereat it is said: "To apply a rule to this case which would necessarily view the society (relator) as having forfeited its character as a fraternal beneficiary society because it issued a certificate to one or several uninitiated persons, and one lodge out of 2600 failed to hold regular meetings, is to give these things undue weight, . . . give the fact of uninitiation an illogical effect, and that by a technical construction of the law and the certificate of a character this court has disapproved. [Armstrong v. Modern Brotherhood, 245 Mo. l. c. 160 et seq.]"

We find no conflict of decisions herein. The opinion and judgment of the St. Louis Court of Appeals must

therefore stand undisturbed by us.  Our writ of *certiorari* herein was improvidently issued and must accordingly be quashed, and it is so ordered.  *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court.  All of the judges concur.